985 P.2d 365 (1999)
139 Wash.2d 107
STATE of Washington, Respondents,
v.
Fonotaga TILI, Appellant.
No. 66695-4.
Supreme Court of Washington, En Banc.
Argued June 8, 1999.
Decided October 7, 1999.
*367 Department of Assigned Counsel, Dino G. Sepe, Tacoma, for Appellant.
Barbara Corey-Boulet, Senior Deputy Prosecutor, John Ladenburg, Pierce County *368 Prosecutor, Kathleen Proctor, Deputy, Tacoma, for Respondents.
*366 IRELAND, J.
This is a direct review from the trial court. A jury found the defendant, Fonotaga Tili, guilty of three counts of first-degree rape, one count of first-degree burglary, and one count of second-degree assault arising from events occurring at the same time and place and involving the same victim. At sentencing, the trial court imposed consecutive terms for the three rape convictions and concurrent terms for the burglary and assault convictions, resulting in a 417-month sentence. Tili claims the double jeopardy clause and the merger doctrine preclude him from being convicted and punished for all five offenses. Tili also claims the trial court erred in imposing consecutive terms for his three first-degree rape convictions. And finally, Tili asserts that certain jury instructions were erroneously given because they represented an improper comment on the evidence by the trial court. We uphold Tili's convictions, but find that his three rape convictions meet the criteria of same criminal conduct for sentencing purposes. Tili's sentence, therefore, is statutorily required to be served concurrently unless an exceptional sentence is imposed.

FACTS
On September 16, 1997, L.M. worked a double shift. After returning home from her second shift at approximately 11:15 p.m., L.M. ran the water in her bathtub, intending to take a bath. Out of habit, L.M. brought her cordless phone with her into the bathroom.
During her bath, L.M. heard what sounded like someone entering her apartment. Frightened, L.M. got out of the bathtub and locked the bathroom door. She waited in the locked bathroom for approximately four minutes, but eventually decided to investigate. Before leaving the bathroom, however, L.M. dialed "9" and "1" on her cordless phone without dialing the last "1" necessary to complete a 911 emergency call.
When L.M. entered the kitchen area, she saw Tili, who was wearing only a pair of underpants and holding a heavy metal pan.[1] Moments later, Tili violently struck L.M. in the head with the metal pan. As Tili began his attack, L.M. was somehow able to dial another "1" on her cordless phone, completing a 911 emergency call. The sounds of the ensuing physical and sexual assault, lasting approximately two minutes, were captured on the 911 system.[2]
After numerous blows with the metal pan, L.M. fell to her knees. She begged Tili to stop, telling him to take anything he wanted, but Tili ignored her pleas and continued his attack. He told L.M. to "shut up" and threatened to kill her. Report of Proceedings (RP) at 381. L.M. testified that after Tili beat her into submission, he instructed her to lie on her stomach and to keep her face to the floor. When L.M. attempted to reposition her face to a more comfortable position, Tili "mash[ed] [her] head into the ground." RP at 382. Tili then positioned L.M. with her buttocks raised, removed her robe to expose her nude body, and began to lick her backside.
Tili proceeded to use his finger to penetrate L.M.'s anus and vagina. Tili inserted his finger into these two orifices separately, not at the same time.[3] Tili told L.M. to say she liked it. She complied. Tili then tried to penetrate L.M.'s anus with his penis, but *369 stopped, and instead inserted his penis into her vagina.
At about this time, two deputies knocked on L.M.'s apartment door. Tili told L.M. to "shut up" or he would kill her. RP at 383; see also RP at 227, 288-89. When the deputies knocked again and announced "police," L.M. screamed. RP at 227-28, 288-89, 383. Tili then hit L.M. several more times before fleeing as the deputies kicked open the apartment door. Upon entering the apartment, the deputies caught a glimpse of Tili, wearing only his underwear, before he escaped through a bedroom window. The deputies pursued Tili, eventually finding him hiding underneath a parked truck in the parking lot outside L.M.'s apartment.
Tili was charged with one count of first-degree burglary, and one count of second-degree assault. The Information also charged Tili with three counts of first-degree rape for each independent penetration of a different bodily orifice or the same orifice with a different object. At trial, Tili conceded he was guilty of rape, but argued that he was guilty of only one count of rape, not three. However, a jury convicted Tili of all three counts of first-degree rape. The jury also convicted him of one count of first-degree burglary and one count of second-degree assault. Tili was sentenced to 417 months. The three counts of rape were sentenced to be served consecutively. The burglary and assault convictions were imposed concurrently with each other and with the three rape convictions.

ANALYSIS
First Issue: Do the defendant's convictions for three counts of rape in the first degree violate double jeopardy?
The double jeopardy clause of the fifth amendment to the United States Constitution and article I, section 9 of the Washington State Constitution prohibit the imposition of multiple punishments for the same offense. State v. Adel, 136 Wash.2d 629, 632, 965 P.2d 1072 (1998) (citing State v. Gocken, 127 Wash.2d 95, 100, 896 P.2d 1267 (1995); State v. Calle, 125 Wash.2d 769, 772, 888 P.2d 155 (1995)). Tili claims that if his three convictions for first-degree rape constitute just one criminal act, or one "unit of prosecution," then his rape convictions violate double jeopardy because he was punished three times for the same offense. See Adel, 136 Wash.2d at 632, 965 P.2d 1072. Tili is incorrect. Under the facts in this case, we hold that Tili's three separate rape convictions do not violate double jeopardy.
If a defendant is convicted of violating a single statute multiple times, the proper inquiry in a single statute case is "what `unit of prosecution' has the Legislature intended as the punishable act under the specific criminal statute." Adel, 136 Wash.2d at 634, 965 P.2d 1072 (citing Bell v. United States, 349 U.S. 81, 83, 75 S.Ct. 620, 99 L.Ed. 905 (1955); State v. Mason, 31 Wash.App. 680, 685-87, 644 P.2d 710 (1982), superseded on other grounds as stated in State v. Elliott, 114 Wash.2d 6, 16, 785 P.2d 440 (1990)). "When the Legislature defines the scope of a criminal act (the unit of prosecution), double jeopardy protects a defendant from being convicted twice under the same statute for committing just one unit of the crime." Adel, 136 Wash.2d at 634, 965 P.2d 1072 (citations omitted). And, if the statute is ambiguous because the Legislature has failed to denote the unit of prosecution, "the ambiguity should be construed in favor of lenity." Adel, 136 Wash.2d at 634-35, 965 P.2d 1072 (citing Bell, 349 U.S. at 84, 75 S.Ct. 620). Because Tili claims that his three convictions for rape in the first degree violate double jeopardy, this is a single statute case and the unit of prosecution analysis applies.
"The first step in the unit of prosecution inquiry is to analyze the criminal statute." Adel, 136 Wash.2d at 635, 965 P.2d 1072. In Washington, there are three degrees of rape, which are defined in RCW 9A.44.040, .050, and .060. These three statutory provisions have parallel construction. Each statutory provision defining a degree of rape begins with a paragraph setting forth standard elements that must always be proved for that degree, followed by subparagraphs, only one of which needs to be proved in order to convict. Compare RCW 9A.44.040, .050,.060. The parallel construction of these statutes *370 dictates that the "unit of prosecution" for rape remains the same from one degree to the next.
The language present in all three statutory provisions provides:
A person is guilty of rape ... when such person engages in sexual intercourse with another person ....
RCW 9A.44.040 (emphasis added); see also RCW 9A.44.050, .060. Each degree of rape consistently requires a standard element: "sexual intercourse." The unit of prosecution for rape, therefore, is the act of "sexual intercourse." Br. of Resp't at 15-16.
The relevant portion of RCW 9A.44.010(1) defines "sexual intercourse" as follows:
(1) "Sexual intercourse" (a) has its ordinary meaning and occurs upon any penetration, however slight, and
(b) Also means any penetration of the vagina or anus however slight, by an object, when committed on one person by another, whether such persons are of the same or opposite sex ..., and
(c) Also means any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex.
(Emphasis added.) The State maintains the Legislature was very clear in stating that sexual intercourse was complete upon any penetration, however slight, of the vagina or anus, or upon any act of sexual contact between the sex organs of one person and the mouth or anus of the other. Br. of Resp't at 16-17 ("predecessor statute to RCW 9A.44.010(1), stated `any penetration, however slight, is sufficient to complete sexual intercourse....'") (citing State v. Kincaid, 69 Wash. 273, 276, 124 P. 684 (1912)). Because the statutory definition of sexual intercourse indicates that any single act of penetration constitutes sexual intercourse, the State argues that two independent digital penetrations of L.M.'s anus and vagina, followed by penile penetration of her vagina, are three separate "units of prosecution." Br. of Resp't at 17.
In contrast, Tili argues the statute is ambiguous as to the proper unit of prosecution for rape. Tili asserts that this ambiguity must be resolved by "[t]he rule of lenity[,]... a well established rule of statutory construction which provides that any ambiguity in a criminal statute must be resolved in favor of the accused and against the state." Br. of Appellant at 27. Tili argues that when the rule of lenity is properly applied to the present case, "it cannot be said that RCW 9A.44.010(1) evinces a legislative intent to punish separately for each penetration occurring during a continuous sexual attack against the same victim at the same time and in the same place." Br. of Appellant at 27. Consequently, under Tili's theory, two of his rape convictions violate both the state and federal double jeopardy clauses. Tili, however, is incorrect.
The meaning of a plain and unambiguous statute must be derived from the wording of the statute itself. See Paulson v. Pierce County, 99 Wash.2d 645, 650, 664 P.2d 1202 (1983). While a statute is ambiguous if it is susceptible to two or more reasonable interpretations, it is not ambiguous merely because different interpretations are conceivable. State v. Hahn, 83 Wash.App. 825, 831, 924 P.2d 392 (1996) (citing State v. Sunich, 76 Wash.App. 202, 206, 884 P.2d 1 (1994)). Without a threshold showing of ambiguity, the court derives a statute's meaning from the wording of the statute itself, and does not engage in statutory construction or consider the rule of lenity. Geschwind v. Flanagan, 121 Wash.2d 833, 840-41, 854 P.2d 1061 (1993); see also Paulson, 99 Wash.2d at 650, 664 P.2d 1202.
Tili fails to make a threshold showing that the statute is ambiguous. The unit of prosecution for rape is "sexual intercourse," which the Legislature has defined as complete upon "any penetration of the vagina or anus, however slight...." RCW 9A.44.010 (emphasis added). Although the word "any" is not defined by the statute, "Washington courts have repeatedly construed the word `any' to mean `every' and `all'." State v. Smith, 117 Wash.2d 263, 271, 814 P.2d 652 (1991) (citing State v. Harris, 39 Wash.App. 460, 463, 693 P.2d 750 (1985); Lee v. Hamilton, 56 Wash.App. 880, 884, 785 P.2d 1156 (1990)). "The Legislature is presumed to be aware of judicial interpretations of its enactments." *371 Friends of Snoqualmie Valley v. King County Boundary Review Bd., 118 Wash.2d 488, 496, 825 P.2d 300 (1992) (citation omitted); see also In re Foreclosure of Liens, 117 Wash.2d 77, 86, 811 P.2d 945 (1991) ("The Legislature is presumed to know existing case law in areas in which it is legislating.").
Opposing a conclusion that sexual intercourse is complete upon any penetration, Tili refers to this court's recent opinion in State v. Adel, 136 Wash.2d 629, 965 P.2d 1072 (1998). In Adel, this court analyzed the possession of marijuana statute and concluded that the language "any person found guilty of possession of forty grams or less of marihuana shall be guilty of a misdemeanor" created one unit of prosecution based solely upon the quantity of drug found where the statute did not reference spatial or temporal aspects of possession. Adel, 136 Wash.2d at 635, 965 P.2d 1072 (quoting RCW 69.50.401(e)). Because this court reasoned that the Legislature failed to indicate whether it intended to punish a person multiple times for simple possession even if the drug was being stashed in multiple places at the same time, the rule of lenity was applied and one of Adel's two convictions was reversed. Adel, 136 Wash.2d at 635-37, 965 P.2d 1072.
Adel is easily distinguished from the instant case because the unit of prosecution in Adel was the possession of 40 grams or less of marijuana, and not an act of sexual intercourse. Nonetheless, Tili likens Adel's reasoning to the present case. Tili argues that if he can be charged and convicted for three counts of first-degree rape based on three separate penetrations, then a defendant could also be charged and convicted for every punch thrown in a fistfight without violating double jeopardy. Tili's argument, however, ignores key differences between the crimes of rape and assault. Unlike the rape statute, the assault statute does not define the specific unit of prosecution in terms of each physical act against a victim. Rather, the Legislature only defined "assault" as that occurring when an individual "assaults" another. See RCW 9A.36.041. A more extensive definition of "assault" is provided by the common law, which sets out many different acts as constituting "assault," some of which do not even require touching. See, e.g., 11 Washington Pattern Jury Instructions: Criminal 35.50 (2d ed. 1994) (WPIC). Consequently, the Legislature clearly has not defined "assault" as occurring upon any physical act.
Under the facts in this case, double jeopardy is not violated by Tili's conviction for three counts of first-degree rape. See Harrell v. Israel, 478 F.Supp. 752, 754 (E.D.Wis. 1979) (if the statute prohibits individual acts and not simply a course of conduct, then each offense is not continuous and several convictions do not violate double jeopardy). Tili committed three independent acts of rape. He penetrated L.M.'s anus with his finger. He then used his finger to penetrate L.M.'s vagina. Tili inserted his finger into these orifices separately, and not at the same time. After forcing L.M. to say she liked these violations, Tili then inserted his penis into her vagina. Each penetration in this case clearly constitutes an independent unit of prosecution. Each penetration was an independent violation of the victim's personal integrity. As one Wisconsin court aptly stated:
Repeated acts of forcible sexual intercourse are not to be construed as a roll of thunder, an echo of a single sound rebounding until attenuated. One should not be allowed to take advantage of the fact that he has already committed one sexual assault on the victim and thereby be permitted to commit further assaults on the same person with no risk of further punishment for each assault committed.
Harrell v. State, 88 Wis.2d 546, 277 N.W.2d 462, 469 (1979). Tili was properly charged and convicted for three counts of first-degree rape. See People v. Harrison, 48 Cal.3d 321, 768 P.2d 1078, 1085-88, 256 Cal.Rptr. 401 (1989) (defendant convicted of three digital penetrations of the victim's vagina, even though offenses were committed over a 7 to 10 minute period and the defendant's sole aim was to achieve sexual gratification); State v. Eisch, 96 Wis.2d 25, 291 N.W.2d 800, 806 (1980) (genital intercourse, anal intercourse, fellatio, and inserting a beer bottle into the victim's genitals, were not "so similar in nature that they merged one into the *372 other so as to be treated as but one offense."); Hamill v. State, 602 P.2d 1212, 1216 (Wyo.1979) (separate and distinct incidents of sexual assault occurring in different ways can constitute separate definable criminal offenses ); Lee v. State, 505 S.W.2d 816, 818 (Tex.Crim.App.1974) (fellatio, anal penetration, and the defendant placing his mouth on the victim's sexual parts constituted separate and distinct offenses); Mikell v. State, 242 Ala. 298, 5 So.2d 825, 826 (1942) ("[R]ape is not a continuous offense and each act of intercourse constitutes a separate and distinct offense.") (citation omitted).
Finally, relying on State v. Johnson, 92 Wash.2d 671, 676-77, 600 P.2d 1249 (1979), Tili claims the Legislature was mindful of the question of whether multiple punishments should be imposed for crimes incidental to a given offense. In Johnson, this court noted that the burglary anti-merger statute, RCW 9A.52.050, showed a legislative intent to require multiple punishments. Johnson, 92 Wash.2d at 676-77, 600 P.2d 1249. Tili argues "[t]he fact that there is no separate statute similar to RCW 9A.52.050 in the sexual offenses section of the criminal code certainly infers legislative intent not to separately punish multiple penetrations occurring in a single sexual attack." Br. of Appellant at 26.
Tili's argument concerning the anti-merger statute fails to recognize the same criminal conduct sentencing statute, which requires multiple convictions to be treated as a single offense under certain circumstances. RCW 9.94A.400(1)(a) requires multiple-current offenses encompassing the same criminal conduct to be counted as one crime in determining the defendant's offender score. "`Same criminal conduct,' as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.400(1)(a). Because sentences determined under RCW 9.94A.400(1)(a) are served concurrently, "it seems clear that the legislative plan accepts the possibility that a single act may result in multiple convictions, and simply limits the consequences of such convictions." State v. Calle, 125 Wash.2d 769, 781-82, 888 P.2d 155 (1995).[4]
Based on the above, we hold that the unit of prosecution for rape is "sexual intercourse" with another individual. Because sexual intercourse is defined in RCW 9A.44.010(1) as "any penetration of the vagina or anus," the two separate digital penetrations of the victim's anus and vagina with Tili's finger, followed by penile penetration of the vagina, constitute three separate units of prosecution. Under the facts in this case, Tili's three first-degree rape convictions do not violate double jeopardy.
Second Issue: Did the trial court err when it concluded that Tili's three counts of rape in the first degree did not constitute the "same criminal conduct"[5] for the purpose of sentencing under RCW 9.94A.400?
Tili asserts that even if his three first-degree rape convictions do not violate double jeopardy, the trial court erred in concluding that these rape convictions were not part of the "same criminal conduct" as defined in RCW 9.94A.400(1)(a). Tili argues that his three rape convictions, resulting from three separate penetrations occurring *373 over a two minute period, should be treated as part of the "same criminal conduct" and, therefore, counted as one crime for sentencing purposes pursuant to RCW 9.94A.400(1)(a). On this point, Tili is correct.
RCW 9.94A.400(1)(a) provides in part:
[W]henever a person is to be sentenced for two or more current offenses, the sentence range for each current offenses shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime. Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions.... "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim....
Accordingly, under subsection (a)(1), the offender score for each current conviction is determined by using all other current convictions as if they were prior convictions. The process is repeated in turn for each current conviction. The resulting offender score is used to determine the sentence range applicable for each conviction. Under this subsection, a sentence is then imposed for each current conviction, which are served concurrently unless an exceptional sentence is imposed. See David. Boerner, Sentencing in Washington §§ 5.8(a), 5.16 (1985).
RCW 9.94A.400(1)(b), on the other hand, creates a "serious violent offenses" exception to subsection (1)(a). Specifically, RCW 9.94A.400(1)(b) provides for mandatory consecutive sentences and an alternative form of calculating offender scores
[w]henever a person is convicted of two or more serious violent offenses, as defined in RCW 9.94A.030, arising from separate and distinct criminal conduct ....
(Emphasis added.) Thus, under subsection (1)(b), the sentences are served consecutively instead of concurrently as provided in subsection (1)(a). State v. Salamanca, 69 Wash.App. 817, 827-28, 851 P.2d 1242 (1993).
The State asserts that Tili's three first-degree rape convictions should be treated as "separate and distinct criminal conduct" pursuant to RCW 9.94A.400(1)(b) because these three rape convictions involve two or more serious violent offenses, as defined in RCW 9.94A.030.[6] Hence, the State argues that Tili's three first-degree rape convictions should run consecutively under RCW 9.94A.400(1)(b), rather than concurrently under the "same criminal conduct" standard provided by RCW 9.94A.400(1)(a). To support this argument, the State claims the use of different language (i.e., "separate and distinct" versus "same") in RCW 9.94A.400(1)(b) evinces a legislative intent to create a standard different from subsection (1)(a) if sentencing for two or more violent offenses, such as multiple first-degree rape convictions.
Tili, on the other hand, argues RCW 9.94A.400(1)(a)'s definition for "same criminal conduct" should be utilized to determine if his three rape convictions are "separate and distinct criminal conduct." Tili argues that if his three rape convictions are part of the "same criminal conduct," they cannot be "separate and distinct criminal conduct" even though his rape convictions are for "serious violent offenses." In essence, Tili claims that if his three rape convictions involve the "same criminal conduct," these convictions are only one offense for sentencing purposes, allowing Tili to be sentenced under RCW 9.94A.400(1)(a) rather than RCW 9.94A.400(1)(b).
It is undisputed that Tili's three rape convictions are "serious violent offenses" under *374 RCW 9.94A.030(34). However, as noted by Tili, the phrase "separate and distinct criminal conduct," unlike the phrase "same criminal conduct," is undefined in RCW 9.94A.400.
Although the meaning of the unambiguous language is derived from the statutes actual language, State v. Smith, 117 Wash.2d 263, 270-71, 814 P.2d 652 (1991), the court may resort to various tools of statutory construction where the language is unclear. Everett Concrete Prods., Inc. v. Department of Labor & Indus., 109 Wash.2d 819, 822, 748 P.2d 1112 (1988) (citations omitted); see also Morris v. Blaker, 118 Wash.2d 133, 142-43, 821 P.2d 482 (1992).
As originally drafted, both subsections (1)(a) and (1)(b) left their respective terms undefined. In 1987, subsection (1)(a) was amended by Laws of 1987, section five, chapter 456, to include a definition of "same criminal conduct." See State v. Farmer, 116 Wash.2d 414, 427, 805 P.2d 200, 13 A.L.R.5th 1070 (1991). However, a similar definition regarding "separate and distinct criminal conduct" was not similarly added at that time, or when subsection (1)(b) was revisited by the Legislature in 1990. See State v. Wilson, 125 Wash.2d 212, 219-20 n. 2, 883 P.2d 320 (1994) (citing Laws of 1990, ch. 3, § 704).
Based on the absence of a clear statutory definition for "separate and distinct criminal conduct," and in light of the legislative history and absence of sufficient guidance to the contrary, we look to the factors defining "same criminal conduct" to determine whether Tili's criminal conduct was not "separate and distinct." See Weyerhaeuser Co. v. Tri, 117 Wash.2d 128, 133, 814 P.2d 629 (1991) ("[E]ach provision of a statute should be read in relation to the other provisions, and the statute should be construed as a whole." (citation omitted)).
"A trial court's determination of what constitutes the same criminal conduct for purposes of calculating an offender score will not be reversed absent an abuse of discretion or misapplication of the law." State v. Walden, 69 Wash.App. 183, 188, 847 P.2d 956 (1993) (citations omitted). In the present case, the trial court imposed consecutive sentences for Tili's three first-degree rape convictions after concluding that these rape convictions were not part of the "same criminal conduct" as defined in RCW 9.94A.400(1)(a). A review of the relevant factors in this case, however, leads to the conclusion that Tili's three rape convictions were part of the "same criminal conduct."
For multiple crimes to be treated as the "same criminal conduct" at sentencing, the crimes must have (1) been committed at the same time and place; (2) involved the same victim; and (3) involved the same objective criminal intent. State v. Palmer, 95 Wash.App. 187, 190, 975 P.2d 1038 (1999) (citing RCW 9.94A.400(1)(a); Walden, 69 Wash.App. at 187-88, 847 P.2d 956). In the instant case, Tili's offenses involved the same victim, occurred at the same place, and were nearly simultaneous in time. The only issue remaining, therefore, is whether the three acts of rape involved the same objective criminal intent.
The relevant inquiry for the intent prong is to what extent did the criminal intent, when viewed objectively, change from one crime to the next. Palmer, 95 Wash. App. at 191, 975 P.2d 1038 (citing State v. Williams, 135 Wash.2d 365, 368, 957 P.2d 216 (1998)). The State relies on State v. Grantham, 84 Wash.App. 854, 932 P.2d 657 (1997), to support its argument that the three rapes involved three different criminal intents. Grantham, however, is factually distinguishable from the present case.
Grantham affirmed the trial court's finding that two rapes were not the "same criminal conduct" for sentencing purposes. Grantham, 84 Wash.App. at 860-61, 932 P.2d 657. The evidence in Grantham supported a conclusion that the criminal episode had ended with the first rape: "Grantham, upon completing the act of forced anal intercourse, had the time and opportunity to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act." Grantham, 84 Wash.App. at 859, 932 P.2d 657. After raping his victim, Grantham stood over her and threatened her not to tell. He then began to argue with and physically assault his victim in order to force her to *375 perform oral sex. Thus, Grantham was able to form a new criminal intent before his second criminal act because his "crimes were sequential, not simultaneous or continuous." Grantham, 84 Wash.App. at 856-57, 859, 932 P.2d 657.
In contrast to the facts in Grantham, Tili's three penetrations of L.M. were continuous, uninterrupted, and committed within a much closer time frame-approximately two minutes. This extremely short time frame, coupled with Tili's unchanging pattern of conduct, objectively viewed, renders it unlikely that Tili formed an independent criminal intent between each separate penetration. Grantham, therefore, is factually distinct. The present case, on the other hand, is more factually similar to State v. Walden, 69 Wash. App. 183, 847 P.2d 956.
In Walden, the defendant was convicted of rape involving fellatio, as well as attempted rape. Both occurred in short succession. Walden, 69 Wash.App. at 184-85, 188, 847 P.2d 956. In determining whether the two acts involved the "same criminal conduct" under RCW 9.94A.400(1)(a), the Walden court held that, "[w]hen viewed objectively, the criminal intent of the conduct comprising the two charges is the same: sexual intercourse. Accordingly, the two crimes of rape in the second degree furthered a single criminal purpose." Walden, 69 Wash.App. at 188, 847 P.2d 956.
As in Walden, Tili's unchanging pattern of conduct, coupled with an extremely close time frame, strongly supports the conclusion that his criminal intent, objectively viewed, did not change from one penetration to the next. This conclusion is consistent with both Walden and Grantham. We hold that the trial court, having failed to articulate any other viable basis to find Tili's conduct "separate and distinct," abused its discretion in failing to treat Tili's three first-degree rape convictions as one crime under RCW 9.94A.400(1)(a). Therefore, Tili should be sentenced under RCW 9.94A.400(1)(a), and not under RCW 9.94A.400(1)(b), because Tili's three first-degree rape convictions, which are the only serious violent offenses involved in this case, are counted as one offense.
Third Issue: Was the double jeopardy clause or merger doctrine violated based on defendant's conviction of second-degree assault as well as first-degree rape?
Tili also argues that his conviction and sentences for first-degree rape and second-degree assault violate the constitutional prohibition against double jeopardy. Tili argues that under Washington State's "same evidence" test, these two crimes are the same in law and in fact. Traditionally, this court has applied the "same evidence" test to determine whether a defendant was improperly punished multiple times for the same criminal offense in violation of double jeopardy. The "same evidence" test, which "mirrors the federal `same elements' [test] adopted in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932)," provides that "double jeopardy is violated if a defendant is convicted of offenses which are the same in law and in fact." State v. Adel, 136 Wash.2d 629, 632, 965 P.2d 1072 (1998) (citations omitted). According to Tili, "[i]t is unlikely that a person can commit rape in the first degree without committing assault given the fact that rape in the first degree requires forcible compulsion and one of the aggravating factors needed to elevate the rape to first[-]degree is to inflict serious physical injury." Br. of Appellant at 38.
While the State concedes that the language used in the charging document causes Tili's second-degree assault conviction to merge with his first-degree rape conviction, the State argues that "when sentencing on the burglary, both the assault and the rape may be separately punished because of the burglary antimerger statute." Br. of Resp't at 45-46.[7] To support this proposition, the State relies on State v. Collicott, 118 Wash.2d 649, 657-58, 827 P.2d 263 (1992).
*376 In Collicott, the defendant burglarized a counseling center where the victim was staying. During the course of the burglary, Collicott raped his victim. After completing these two acts, Collicott kidnapped his victim. Collicott, 118 Wash.2d at 650-51 n. 4, 827 P.2d 263. Relying on the burglary anti-merger statute, RCW 9A.52.050,[8] this court concluded that it was proper to charge and punish the defendant with "burglary in the first degree (count 1), rape in the first degree (count 2) and kidnapping in the first degree (count 3)." Collicott, 118 Wash.2d at 658, 827 P.2d 263. While we agree with the State's position that under Collicott and RCW 9A.52.050, there is no merger of the assault and burglary convictions, the assault may be used in calculating the offender score for the burglary conviction only, and not for the rape charges.
Fourth Issue: Did the trial judge instruct the jury without improperly commenting on the evidence?
Instructions satisfy the requirement of a fair trial when, taken as a whole, they properly inform the jury of the applicable law, are not misleading, and permit the defendant to argue his theory of the case. State v. Theroff, 95 Wash.2d 385, 389, 622 P.2d 1240 (1980). However, a trial court is forbidden from commenting on the evidence presented at trial. Wash. Const. art. IV, § 16.[9] "`An impermissible comment is one which conveys to the jury a judge's personal attitudes toward the merits of the case or allows the jury to infer from what the judge said or did not say that the judge personally believed the testimony in question.'" State v. Deal, 128 Wash.2d 693, 703, 911 P.2d 996 (1996) (quoting State v. Swan, 114 Wash.2d 613, 657, 790 P.2d 610 (1990)).
Tili claims the trial court commented on the evidence when it gave instruction 10. While this instruction defined penetration consistent with WPIC 45.01, the trial court added the following language:
The phrase "any penetration of the vagina or anus, however slight, by an object" does not necessarily mean an inanimate object and includes a finger.
CP at 50. According to Tili, there was a factual issue during the victim's testimony about whether it was defendant's finger or some other object that penetrated her anus or vagina,[10] and by instructing the jury that the penetration of an object can include a finger, the trial court improperly implied to the jury its belief that the victim was penetrated by Defendant's finger. Br. of Appellant at 40. Tili's argument is without merit.
The trial court's addition to WPIC 45.01 in Instruction No. 10 was a correct statement of law. See State v. Cain, 28 Wash.App. 462, 464-65, 624 P.2d 732 (1981) (a finger is an "object" under RCW 9A.44.010); see also footnote 3, supra. In this case, there was never any dispute that L.M. was penetrated three separate times. The dispute concerned only whether Tili's finger or some other object penetrated L.M. The wording in the instructions does not indicate how the court felt about the victim's testimony. It merely informed the jury of the appropriate rule of law applicable to the facts in this case. Consequently, there was no error.
Tili also claims error in instructions 7, 8, and 9 because "each instruction exceeded what is required in WPIC 40.02 and RCW 9A.44.040 ... [by] includ[ing] a description of the specific sexual act that constituted the intercourse." Br. of Appellant at 40-41.[11] Tili claims these instructions were an inappropriate comment on the evidence because they inferred that the court believed three counts of rape had occurred. Tili claims *377 these instructions prevented him from arguing his theory of the case, i.e., that only one rape occurred.
As with instruction 10, instructions 7, 8, and 9 do not indicate the trial court's opinion concerning evidence presented at trial. Rather, the description in the instructions of the type of sexual intercourse alleged in each count simply assured that the jury would consider each count distinctly. These instructions did not convey the trial judge's personal beliefs or attitudes to the jury. Defendant was unfettered in arguing the merits of the allegations. Consequently, we find the trial court also did not improperly comment on the evidence in instructions 7, 8, and 9.

CONCLUSION
Although Tili was properly convicted of three counts of first-degree rape, the trial court abused its discretion in failing to count Tili's rape convictions as part of the "same criminal conduct" and, therefore, as one crime for sentencing purposes. Because first-degree rape is the only "serious violent offense" for which Tili was convicted, he is properly sentenced under RCW 9.94A.400(1)(a), rather than RCW 9.94A.400(1)(b), which requires two or more serious violent offenses arising from "separate and distinct criminal conduct."
In sentencing for the rape conviction, Tili's offender score should include his first-degree burglary conviction, which is subject to the burglary anti-merger statute. Tili's offender score for the rape conviction, however, should not include his second-degree assault conviction because the State concedes it merges with the rape conviction. Tili's current criminal history for his second-degree assault conviction should include the first-degree burglary conviction, but not the rape conviction. Additionally, Tili's current criminal history for the burglary conviction includes both the assault, as well as the three first-degree rape counts which, as noted above, are scored as one conviction because Tili's rape convictions are part of the "same criminal conduct." This case is remanded for resentencing consistent herewith.
GUY, C.J., SMITH, JOHNSON, MADSEN, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.
NOTES
[1] At trial, L.M. identified Tili as her attacker, having seen him at events when she was in high school and at the apartment complex a few days earlier.
[2] The 911 tape was admitted as evidence and is part of the record on appeal.
[3] There was a factual dispute at trial concerning whether Tili used his finger or some object to penetrate L.M.'s anus and vagina. Under the relevant statute, RCW 9A.44.010(1)(b), the definition of sexual intercourse includes "any penetration of the vagina or anus, however slight, by an object ...." (emphasis added). A finger is clearly "an object" and, thus, this dispute is of no consequence. See State v. Cain, 28 Wash.App. 462, 465, 624 P.2d 732 (1981) (under former RCW 9.79.140(1), the predecessor statute to RCW 9A.44.010, the court concluded that "[a] finger is an object within the meaning and intent of the statute."). See also issue number four, infra.
[4] Tili also argues the presence of RCW 9.94A.120(2), which allows a court to impose a sentence beyond what is permissible under the standard sentence range, evinces a legislative intent to consider multiple penetrations only as an aggravating factor rather than separate crimes. We do not agree. The legislative foundations, in function and purpose, which apply to unit of prosecution and sentencing, are different. See footnote 5, infra.
[5] It should be noted that the "same criminal conduct" analysis under the Sentencing Reform Act of 1981, and the "unit of prosecution" analysis under double jeopardy are distinct. The "unit of prosecution" analysis is involved during the charging and trial stages, focusing on the Legislature's intent regarding the specific statute giving rise to the charges at issue. See, e.g., State v. Adel, 136 Wash.2d 629, 965 P.2d 1072 (1998). The "same criminal conduct" analysis, on the other hand, involves the sentencing phase and focuses on (1) the defendant's criminal objective intent, (2) whether the crime was committed at the same time and place, and (3) whether the crime involved the same victim. See, e.g., State v. Palmer, 95 Wash.App. 187, 190, 975 P.2d 1038 (1999) (citing RCW 9.94A.400(1)(a)).
[6] RCW 9.94A.030(31)(a) provides that:

"Serious violent offense" is a subcategory of violent offense and means:
(a) Murder in the first degree, homicide by abuse, murder in the second degree, manslaughter in the first degree, assault in the first degree, kidnapping in the first degree, or rape in the first degree, assault of a child in the first degree, or an attempt, criminal solicitation, or criminal conspiracy to commit one of these felonies....
(Emphasis added.)
[7] Tili also argues the merger doctrine precludes him from being prosecuted for second-degree assault and first-degree rape. Because the State concedes double jeopardy is violated, it is unnecessary to address Tili's argument concerning the merger of the assault and rape convictions under the merger doctrine.
[8] RCW 9A.52.050, provides that "[e]very person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime separately."
[9] While a defendant on appeal is ordinarily limited to specific objections raised before the trial court, he can, for the first time on appeal, argue that an instruction was an improper comment on the evidence. See, e.g., State v. Becker, 132 Wash.2d 54, 64, 935 P.2d 1321 (1997).
[10] See note 4, supra.
[11] Instructions 7 and 8 referred to putting an object in L.M.'s anus and vagina, while instruction 9 referred to putting the defendant's penis in L.M.'s vagina.