IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 32293-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SHAWN ERIN MULLEN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, J. — A jury found Shawn Mullen guilty of first degree burglary and first degree robbery for entering the home of Leonard Dewitt, assaulting him, and taking a $100 bill from him. On appeal, Mullen contends the trial court abused its discretion when it concluded that the burglary and robbery were not the same criminal conduct for purposes of calculating his offender score. We disagree and affirm Mullen's sentence.

## FACTS

Shawn Mullen and his victim, Leonard (Lenny) Dewitt, were not close friends, but knew each other and shared mutual friends. Dewitt did not own a car and so Mullen occasionally provided Dewitt rides, including to and from a casino. Mullen also loaned Dewitt money.

On December 12, 2011, Lenny Dewitt, Shawn Mullen, and Mullen's girl friend, Alexis McGregor, went to a casino. Since he lacked cash, Dewitt asked Mullen to loan him money. Mullen lent Dewitt between $30 and $50.

Shawn Mullen testified at trial that Lenny Dewitt owed him $1,000 total, and that Dewitt failed to return sunglasses he borrowed from Mullen. According to Mullen, Dewitt repeatedly promised to satisfy the debt, but never did. Mullen also believed that Dewitt had stolen electronics from him.

About 6:00 p.m. on December 16, 2011, Shawn Mullen decided to go to Lenny Dewitt's home to "get [his] money back." RP at 313. Mullen invited Alexis McGregor and Albert Huniu to join him. He told the two he wanted to collect his money. Mullen barely knew Huniu but wanted to bring "a big guy to intimidate [Dewitt] a little bit." RP at 332. The three went to Dewitt's home, knocked on the front, but there was no response. They left to return later that night.

Lenny Dewitt arrived home after 11:00 p.m. with a friend, Kevin O'Connor. Dewitt and O'Connor entered the home through the garage, because the front door was broken. Dewitt expected his boyfriend, Michael Haan, home any minute, so he left the garage door open and a light on. Both Dewitt and O'Connor needed to use the restroom. O'Connor used the only downstairs bathroom; Dewitt used an upstairs bathroom.

Meanwhile Shawn Mullen, Alexis McGregor, and Albert Huniu returned to Lenny Dewitt's home. McGregor sat in Mullen's truck and played a game on her cell phone.

2

Mullen and Huniu entered Lenny Dewitt's home through the open garage. Huniu carried a golf club. Mullen testified that he instructed Huniu to not use violence and that the golf club was unnecessary.

From the upstairs, Lenny Dewitt heard two voices in his home. Dewitt recognized one of the voices as Shawn Mullen's tone, but did not recognize the other. Dewitt ran downstairs to discover Mullen and Albert Huniu. Dewitt was not expecting Mullen and had never met Huniu. Dewitt described Huniu as "a big, stocky-type guy, you know, medium height, just really big and stocky," and "[t]hat he was kind of angry." RP at 91. Mullen was also upset.

Shawn Mullen talked about a PlayStation 3. Then Albert Huniu repeatedly beat Lenny Dewitt with the golf club. Dewitt tried to escape the assault by shielding himself with furniture, but Huniu persisted in striking him. Dewitt tried to run outside. Mullen blocked his way. Dewitt handed Mullen two $100 bills, after which Huniu ended his attack. Mullen spoke of property stolen from his house and then punched Dewitt in the face.

Lenny Dewitt ran upstairs into his office and locked the door. Shawn Mullen pursued him upstairs. According to Mullen, Dewitt went upstairs to collect and then return Mullen's property. Mullen pounded on the office door. Dewitt told Mullen, "I'm calling 911" which he did. RP at 133. Mullen left.

From the truck, Alexis McGregor saw Albert Huniu leave Lenny Dewitt's home

3

and walk down the street with the golf club. Shawn Mullen exited the house and entered the truck. When McGregor asked what happened, Mullen replied "[n]ot to worry about it." RP at 53. McGregor then saw Dewitt, with blood dripping from his nose, standing in front of the truck. Mullen drove down the street and picked up Huniu. Huniu entered the truck, without the golf club. Mullen told McGregor that "Albert got a little carried away." RP at 61.

From his driveway, Lenny Dewitt reported Shawn Mullen's license plate number to a 911 operator. About 15 minutes later, police pulled Shawn Mullen over. Mullen told police that he was tired of Dewitt robbing him and that whatever Dewitt said was a lie. Police arrested Mullen, found two $100 bills in Mullen's pocket and a golf club in bushes near Dewitt's home.

## PROCEDURE

The State charged Shawn Mullen with first degree burglary and first degree robbery, with deadly weapon enhancements for both counts. The charges proceeded to a jury trial.

The trial court instructed the jury on first degree burglary:

> A person commits the crime of burglary in the first degree when he or she enters or remains unlawfully in a building with intent to commit a crime against a person or property therein, and if, in entering or while in the building or in immediate flight therefrom, that person or an accomplice in the crime assaults any person.
> . . . .

4

To convict the defendant of the crime of burglary in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 16th day of December, 2011, the defendant entered or remained unlawfully in a building;

(2) *That the entering or remaining was with intent to commit a crime against a person or property therein*;

(3) That in so entering or while in the building or in immediate flight from the building the defendant or an accomplice in the crime charged assaulted a person, and

(4) That any of these acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Clerk'Papers (CP) at 76-77 (emphasis added). The burglary instruction did not specify the other crime intended to be committed by Mullen when entering Lenny Dewitt's home.

For first degree robbery, the trial court instructed the jury:

A person commits the crime of robbery in the first degree when in the commission of a robbery he or she inflicts bodily injury.

. . . .

To convict the defendant of the crime of robbery in the first degree, each of the following six elements of the crime must be proved beyond a reasonable doubt:

(1) That on or about the 16th day of December, 2011 the defendant or an accomplice unlawfully took personal property from the person or in the presence of another;

(2) That the defendant or accomplice intended to commit theft of the property;

5

(3) That the taking was against the person's will by the defendant or accomplice's use or threatened use of immediate force, violence or fear of injury to that person;

(4) That the force or fear was used by the defendant or accomplice to obtain or retain possession of the property or to prevent or overcome resistance to the taking;

(5) That in the commission of these acts the defendant or an accomplice inflicted bodily injury; and

(6) That any of these acts occurred in the State of Washington.

If you find from the evidence that each of these elements have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 66-67.

The jury found Mullen guilty of both counts. By special verdict, the jury also found for each count that Mullen was "armed with a deadly weapon." CP at 101-02.

At sentencing, Shawn Mullen argued that the burglary and robbery should constitute the same criminal conduct for purposes of sentencing. Friends and family also wrote to the trial court requesting leniency, pointing to Mullen's strong work ethic and dedication to his son.

The trial court concluded that the burglary and robbery were not the same criminal conduct for purposes of calculating Mullen's offender score under RCW 9.94A.589. The trial court calculated Shawn Mullen's offender score as three based on a 2003 conviction for unlawful possession of a controlled substance and the two convictions at issue in this case.

Under RCW 9A.52.050, the burglary anti-merger statute, "a trial judge [has] discretion to punish a burglary separately, even where the burglary and another crime encompassed the same criminal conduct." *State v. Knight*, 176 Wn. App. 936, 962, 309 P.3d 776 (2013), *review denied*, 179 Wn.2d 1021, 318 P.3d 279 (2014). Because it concluded that Mullen's burglary and robbery were not the same criminal conduct, the trial court did not review whether to apply the anti-merger statute.

Based on the offender score of three, the trial court sentenced Shawn Mullen to 41 months confinement for first degree burglary and 53 months for first degree robbery. The trial court added 24 months to each crime as a deadly weapon enhancement for a total of 65 months for burglary and 77 months for robbery. The court ordered Mullen's sentences to run concurrently for a total of 77 months' confinement.

## LAW AND ANALYSIS

### *Same Criminal Conduct*

Shawn Mullen contends that his convictions for first degree burglary and first degree robbery constitute the "same criminal conduct" for purposes of calculating his offender score under RCW 9.94A.589. "'A trial court's determination of what constitutes the same criminal conduct for purposes of calculating an offender score will not be reversed absent an abuse of discretion or misapplication of the law.'" *State v. Tili*, 139 Wn.2d 107, 122, 985 P.2d 365 (1999) (quoting *State v. Walden*, 69 Wn. App. 183, 188, 847 P.2d 956 (1993)). "A trial court abuses its discretion when its decision is

7

manifestly unreasonable or based on untenable grounds or reasons." *State v. Mehrabian*, 175 Wn. App. 678, 710, 308 P.3d 660, *review denied*, 178 Wn.2d 1022, 312 P.3d 650 (2013).

RCW 9.94A.589(1)(a) provides:

Except as provided in (b) or (c) of this subsection, whenever a person is to be sentenced for two or more current offenses, the sentence range for each current offense shall be determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score: PROVIDED, That if the court enters a finding that some or all of the current offenses encompass the *same criminal conduct* then *those current offenses shall be counted as one crime*. Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535. "Same criminal conduct," as used in this subsection, means two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim.

(Emphasis added.) "If any one of these elements is missing, the sentencing court must count the offenses separately in calculating the offender score." *Knight*, 176 Wn. App. at 959.

Shawn Mullen committed the burglary and robbery at the same time and place and against the same victim. At issue is whether Mullen's convictions required the same criminal intent for purposes of RCW 9.94A.589(1)(a).

"In order to determine whether two crimes share the same criminal intent, courts look at whether the defendant's intent, viewed objectively, changed from one crime to the next and whether commission of one crime furthered the other." *State v. Bickle*, 153 Wn.

App. 222, 229-30, 222 P.3d 113 (2009). "Intent, in this context, is not the particular *mens rea* element of the particular crime, but rather is the offender's objective criminal purpose in committing the crime." *State v. Adame*, 56 Wn. App. 803, 811, 785 P.2d 1144 (1990). "To determine whether a defendant's intent changed, we analyze whether crimes are sequential or continuous." *Mehrabian*, 175 Wn. App. at 711. "When a defendant 'ha[s] the time and opportunity to pause, reflect, and either cease his criminal activity or proceed to commit a further criminal act,' the crimes are sequential and not the same criminal conduct." *Mehrabian*, 175 Wn. App. at 711 (quoting *State v. Grantham*, 84 Wn. App. 854, 859, 932 P.2d 657 (1997)).

RCW 9.94A.589 affords a trial court discretion. The trial court could have concluded that Shawn Mullen's convictions for burglary and robbery expressed a singular criminal purpose—namely, to bully Lenny Dewitt into returning Mullen's property and satisfying debts. Mullen testified he went to Dewitt's home in order to get his money. He admitted that he brought Albert Huniu along to intimidate Dewitt. Mullen unlawfully entered Dewitt's home in order to retrieve what he perceived to be his; in this way, Mullen's burglary furthered the robbery. During the assault, Mullen twice mentioned property Dewitt purportedly stole from him. Thus, a trial court could conclude the evidence showed continuous criminal conduct.

The opposite conclusion is equally plausible. Shawn Mullen completed the crime of burglary when he entered Lenny Dewitt's home with the intent to intimidate him.

9

Dewitt ran downstairs. Mullen spoke about a PlayStation 3, after which Albert Huniu beat Dewitt with a golf club. Dewitt shielded himself with a piece of furniture and then tried to run outside. At this point, Mullen had not yet assaulted Dewitt. Mullen could have allowed Dewitt to escape outside with his message of intimidation already delivered. But instead, Mullen blocked Dewitt from leaving and punched Dewitt in the face. Only after Mullen punched Dewitt did Dewitt give Mullen one or two $100 bills, completing the robbery. Mullen committed burglary, with an underlying assault by intimidation. Then, Mullen committed robbery, punching Dewitt into surrendering his property. Thus, the trial court could conclude the evidence showed sequential criminal activity and intent.

The trial court's refusal to exercise its discretion in a manner favoring Shawn Mullen does not constitute an abuse of that discretion. The court's application of RCW 9.94A.589 was reasonable and tenable. The trial court did not misapply the law.

*Statement of Additional Grounds (SAG)*

In his SAG, Shawn Mullen contends that the State deliberately misled the court when it paraphrased Lenny Dewitt's testimony at Mullen's sentencing hearing. He does not argue any basis for relief, however. There is no cognizable issue for this court to address.

CONCLUSION

We affirm Shawn Mullen's sentence.

No. 32293-9-III
*State v. Mullen*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.

11