IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                              Respondent,<br><br>          v.<br><br>JAMES DEWAYNE GARDNER,<br><br>                               Appellant. | No. 81035-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUN, J. — James Gardner molested A.R. twice in short succession on his bed, but A.R. left the room between each instance. Then, Gardner molested her the following morning in a different room. A jury convicted Gardner of three counts of child molestation. At sentencing, Gardner's attorney did not argue that at least two of his offenses—namely, those he committed on his bed, in short succession—constituted the same criminal conduct, and that he should have received a lower offender score. Gardner claims this constituted ineffective assistance of counsel. But because he suffered no prejudice from his trial counsel failing to make such an objection, we affirm. Additionally, because Gardner is indigent, we remand to strike the $200 criminal filing fee and interest accrual provision from his Judgment and Sentence.

## I. BACKGROUND

During the summer of 2016, A.R. stayed regularly with her mother and Gardner, her mother's boyfriend, at his apartment. Gardner's three daughters

Citations and pin cites are based on the Westlaw online version of the cited material.

also lived in the apartment.

One evening, A.R. and Gardner's daughter, S.G., watched a movie on the bed in Gardner's room. Gardner was at home, using the computer in the same room, and A.R.'s mother was at work. During the movie, Gardner moved onto the bed next to A.R., grabbed her waist, pulled her close to him, and touched her vagina over her clothing. A.R. asked Gardner what he was doing and got off the bed. Gardner said, "Sorry." A.R. then left the room, went into the kitchen, and unsuccessfully attempted to call her mother. A.R. stood in the kitchen for a few minutes until S.G. came out and asked her if she was going to come back and watch the movie; A.R. indicated that she would.

Both A.R. and S.G. went back into the room and sat on the bed. A.R. tried to switch places with S.G. so that she would not be next to Gardner on the bed, but Gardner directed S.G. to sit on the outside of the bed, with A.R. once again between S.G. and Gardner. Gardner then grabbed A.R.'s waist, pulled her close to him, and touched her on her vagina, this time under her pants but over her underwear. A.R. again got up and asked Gardner why he was doing that to her. Gardner replied, "Sorry." A.R. then left the room and unsuccessfully attempted to call her mother again. A.R. decided not to go back into Gardner's room, went to go sleep on a mattress in the room that Gardner's two other daughters were sleeping in, and wrapped herself up in a blanket.

When A.R. woke up, Gardner had put his body on top of hers, and was touching her vagina under her underwear. A.R. got up and asked Gardner why he would not stop touching her. Gardner replied that he was sorry and that A.R.

2

should stop watching horror movies. Gardner left the room and went back to his room. A.R. once again called her mother, who answered. A.R. told her mother what had happened.

A.R.'s mother arrived at the apartment and confronted Gardner. A.R.'s mother then took her to stay with her grandmother. A.R. then moved to her father's home in North Carolina. A.R. eventually told her father and stepmother what Gardner had done, and her father contacted the police.

A jury convicted Gardner on three counts of third-degree child molestation. The trial court also imposed a $200 criminal filing fee and an interest accrual provision. Gardner appeals.

## II. ANALYSIS

### A. Ineffective Assistance of Counsel

Gardner argues he received ineffective assistance of counsel because his trial attorney failed to argue that some or all of his convictions for child molestation in the third degree involved the same conduct, and should have been scored as a single offense. The State argues that the convictions were properly scored as separate offenses because they involved different criminal conduct. We agree with the State.

A defendant "must show both (1) deficient performance, and (2) resulting prejudice" to prevail on a claim for ineffective assistance of counsel. State v. Estes, 188 Wn.2d 450, 457–58, 395 P.3d 1045 (2017); Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Performance is deficient if it falls below an objective standard of reasonableness based on

3

consideration of all the circumstances. Prejudice exists if there is a reasonable probability that but for counsel's deficient performance, the outcome of the proceedings would have been different." Estes, 188 Wn.2d at 458 (internal quotation marks and citations omitted).

Here, assuming deficient performance, there is not a reasonable probability that the outcome of the proceedings would have been different if Gardner's trial attorney had argued his child molestation offenses constituted the same criminal conduct.

If a trial court finds at sentencing that some or all of the defendant's offenses encompass the same criminal conduct, then a court must count those offenses as one crime for sentencing purposes. RCW 9.94A.589(1)(a). Offenses encompass the "same criminal conduct" when they: (1) require the same criminal intent, (2) are committed at the same time and place, and (3) involve the same victim. RCW 9.94A.589(1)(a). We construe narrowly whether a defendant's offenses constitute the same criminal conduct, and "will not find same criminal conduct if any of the three elements are missing." State v. Saunders, 120 Wn. App. 800, 824, 86 P.3d 232 (2004). Gardner bears the burden of establishing that his offenses constituted the same conduct. State v. Phuong, 174 Wn. App. 494, 547, 299 P.3d 37 (2013).

Where a defendant has "time and opportunity to pause, reflect, and either cease [their] criminal activity or proceed to commit a further criminal act," they have opportunity to form new criminal intent, even where their offenses take place in the same general time and place. State v. Mutch, 171 Wn.2d 646, 654–

55, 254 P.3d 803 (2011). In Mutch, the defendant raped his victim five times over the course of one night, and a jury convicted him of five counts of second-degree rape. 171 Wn.2d at 654–55. The defendant stopped for about an hour between each of the first four rapes. Mutch, 171 Wn.2d at 655. Then, the defendant slept; the fifth rape took place after the defendant awoke and in a different room than the first four. Mutch, 171 Wn.2d at 655. The court concluded the defendant's offenses did not constitute the same criminal conduct, since he had time to "pause, reflect, and either cease or continue," and thus, "[h]e objectively formed new criminal intent" for each offense." Mutch, 171 Wn.2d at 655.

By contrast, in State v. Tili, the defendant first digitally penetrated the victim's anus, then digitally penetrated the victim's vagina, and finally used his penis to penetrate the victim's vagina. 139 Wn.2d 107, 117, 985 P.2d 365 (1999). The defendant committed each act of penetration in the same room, continuous with the previous act, and without interruption. Tili, 139 Wn.2d at 124. The court held that the defendant's rape offenses constituted the same criminal conduct because they were separated only by approximately two minutes and involved an unchanging pattern of criminal conduct. Tili, 139 Wn.2d at 124.

Gardner's offenses involved the same victim—A.R. All three offenses took place over the course of one night and morning, at Gardner's apartment. As in Tili, the first two offenses took place over a short period of time—just a matter of minutes. However, unlike in Tili, where the defendant committed each rape

5

without interruption, between the first two offenses, A.R. stood up, asked Gardner what he was doing, left the room, and stayed in the kitchen until S.G. asked her if she was coming back into the room. When she came back into the room, Gardner ordered S.G. to sit on the edge of the bed so that A.R. would be next to him, and then pulled her toward him and molested her again. While only a few minutes separated each of the first two offenses, A.R.'s leaving the room and asking Gardner what he was doing gave him the opportunity to pause, reflect, and cease his conduct. Instead, he chose to continue, and molested her once again. Thus, Gardner formed new criminal intent between the first and second offenses.

Gardner also formed new criminal intent between the second and third offenses. As in Mutch, the third time that Gardner molested A.R., he did so in a different room than he did the previous times. Again, A.R. had left the room after the second instance and asked Gardner why he was touching her. Additionally, A.R. had wrapped herself up in a blanket, requiring Gardner to undo the blanket to touch her body.

Because the foregoing facts establish that Gardner formed new criminal intent each time he molested A.R., he has failed to meet his burden of establishing that his offenses constituted the same criminal conduct. Because his offenses did not constitute the same criminal conduct, there is no reasonable probability that the outcome of his sentencing would have been different had his trial counsel raised such an objection. Thus, he suffered no prejudice, and his ineffective assistance of counsel claim fails.

6

B. Legal Financial Obligations

Gardner argues we should remand to strike the $200 criminal filing fee and interest accrual provision from his Judgment and Sentence, since he is indigent. The State agrees.

Under State v. Ramirez, 191 Wn.2d 732, 426 P.3d 714 (2018), courts may not impose discretionary fees—such as the $200 criminal filing fee—on indigent defendants. Ramirez also states that interest cannot accrue on nonrestitution portions of legal financial obligations. 191 Wn.2d at 747. The trial court recognized Gardner's indigence when it allowed him to pursue an appeal at public expense. Thus, we remand to strike the criminal filing fee and interest accrual provision from his Judgment and Sentence.

Sentence affirmed, with remand to strike filing fee and interest accrual provision.

_____
Chun, J.

WE CONCUR:

_____          _____