**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MAY 6, 2021

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MAY 6, 2021

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| STATE OF WASHINGTON, | NO. 98067-5 |
| Respondent, | |
| v. | EN BANC |
| LELAND HOHN KNAPP IV, | |
| Petitioner. | Filed: May 6, 2021 |

STEPHENS, J.— For decades, Washington law treated consent as an affirmative defense to rape, meaning the defendant charged with rape had to prove the survivor of the alleged assault consented to sex. We recently recognized, however, that placing the burden of proving a consent defense on the defendant violates the defendant's due process rights. *State v. W.R.*, 181 Wn.2d 757, 763, 336 P.3d 1134 (2014). Now, "once a defendant asserts a consent defense and provides sufficient evidence to support the defense, the State bears the burden of proving lack of consent as part of its proof of the element of forcible compulsion." *Id.*

1

*State v. Knapp*, No. 98067-5

The question in this case is whether the instructions given in Leland Knapp's trial adequately communicated that updated rule to the jury. Because the instructions properly informed the jury of the applicable law, were not misleading, and permitted Knapp to argue his theory of the case, we hold they are constitutionally adequate. Accordingly, we affirm Knapp's conviction.

FACTS AND PROCEDURAL HISTORY

The facts in this case are disputed. The parties agree only that Knapp had intercourse with B.S.[1] on Super Bowl Sunday, February 7, 2016; that Knapp was high on methamphetamine at the time; and that Knapp and B.S. had been friends since high school, when B.S. was Knapp's boss at a Jack in the Box restaurant. The remaining facts are contested.

I. The State's Version of Events

Knapp unexpectedly came to B.S.'s house shortly before the Super Bowl started. Knapp was high on methamphetamine and had consumed alcohol earlier in the day, the combination of which left Knapp significantly impaired. Knapp sat with B.S. on the couch and began making sexual and vulgar comments, which was out of character and made B.S. uncomfortable. When he leaned in for a kiss, B.S. told

---

[1] Consistent with the State's briefing, we identify the person who survived this rape by her initials.

2

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Knapp, "'That's not gonna happen'" and "'No.'"   4 Verbatim Report of Proceedings (VRP) at 616.  Knapp quickly left the house.

But Knapp soon returned, claiming he left his bandana behind.  Once back inside the house, Knapp threw B.S. to the ground and began pulling down her pants.  B.S. resisted, "[t]rying to pull them back up and telling [Knapp], 'No.'" *Id*. at 617.  B.S. heard her neighbors outside and screamed for help, but the neighbors did not hear her.  Knapp gagged B.S. with his bandana so she could not scream anymore.

As they continued to struggle, Knapp removed the bandana from B.S.'s mouth and tried to use it to tie her hands together.  B.S. attempted to escape, scooting away on the floor as she tried to pull her pants back up.  Knapp caught B.S., pinned her against a wall, and raped her.  Knapp then fled, but not before telling B.S. that she would never know if she was "his first or his 16th rape." *Id*. at 626.

B.S. called her mother, then she called the police.  The police took B.S.'s statement and transported her to the hospital, where an examination revealed genital injuries consistent with rape.  Police apprehended Knapp soon after and, though no officer told Knapp he was under arrest for rape, Knapp stated, "'It's her word against mine.'" *Id*. at 650.  An analysis of Knapp's bandana—which he again left at B.S.'s house—identified genetic material that matched B.S.'s saliva and skin cells,

consistent with B.S.'s statement to police. The Benton County prosecutor charged Knapp with rape in the second degree by forcible compulsion.

II.     Knapp's Version of Events

Knapp acknowledged he visited B.S. at her house on Super Bowl Sunday, offering several reasons for his visit, including to "invite [B.S.] to a birthday party," "pay her back the money [he] owed her," "say that [he] had cancer," and/or simply "to say hello to a friend." *Id*. at 638, 660. Knapp claims B.S. began demanding drugs when she realized he was high. When Knapp refused, B.S. became angry, so Knapp left.

Soon after, Knapp realized he forgot his bandana at B.S.'s house and returned to retrieve it. B.S. again asked Knapp to share methamphetamine with her and offered sex in exchange. According to Knapp, this was an arrangement he and B.S. had made on previous occasions. Knapp decided to "get her high and have sex with her." *Id*. at 643. Knapp and B.S. had intercourse, which Knapp argued was consensual.

Afterward, Knapp "misplaced the methamphetamines" and B.S. became "pretty irate." *Id.* at 644. B.S. threatened to call the police and falsely accuse Knapp of rape. Knapp left and was soon stopped by police, but initially assumed he was stopped for his outstanding legal financial obligations. Knapp told police, "'It's her

word against mine'" when he deduced that B.S. had, in fact, called the police to accuse him of rape. *Id*. at 650.

III.    Procedural History

After three days of trial,[2] the trial court instructed the jury, using the Washington Pattern Jury Instructions: Criminal (WPICs) for cases involving second degree rape by forcible compulsion. Those instructions had been recently revised in accordance with our decision in *W.R*. *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.25 cmt. at 304-05 (4th ed. 2016) (WPIC). The trial court used three pattern instructions relevant here.

The first instruction lays out the elements of second degree rape that the State must prove in order to convict the defendant of second degree rape under RCW 9A.44.050, including that the defendant used "forcible compulsion" to have sex with the survivor. WPIC 41.02, at 833. The second instruction defines "forcible compulsion" as "physical force that overcomes resistance, or a threat . . . that places a person in fear of death or physical injury to oneself or another person or in fear of being kidnapped or that another person will be kidnapped." WPIC 45.03, at 918. And the third instruction provides that "[e]vidence of consent may be taken into

---

[2] This trial was Knapp's second. Immediately after the jury returned the verdict in Knapp's first trial, the presiding juror revealed that she had made material misrepresentations during voir dire, and the trial court granted Knapp's motion for a new trial. No aspect of Knapp's first trial is at issue here.

consideration in determining whether the defendant used forcible compulsion to have [sexual intercourse].'' WPIC 18.25, at 304 (second alteration in original).

Knapp objected to the second and third pattern instructions, arguing they did not adequately inform the jury that the State bears the burden of proving lack of consent beyond a reasonable doubt. Knapp proposed a pair of alternative instructions defining forcible compulsion and describing how evidence of consent may be used. Knapp's proposed instruction on forcible compulsion provided:

> Forcible compulsion exists when *both of the following elements* are present:
>      (1) a person has not consented to sexual intercourse, [and]
>      (2) that person has been subjected to physical force that overcomes resistance, or a threat . . . .

Clerk's Papers (CP) at 411 (emphasis added). Knapp's proposed instruction on consent provided:

> Consent means that at the time of the act of sexual intercourse there are actual words or conduct indicating a freely given agreement to have sexual intercourse. The defendant has no burden to prove that the sexual intercourse was consensual. It is the State's burden to prove the absence of consent beyond a reasonable doubt.

CP at 412.

The trial court rejected Knapp's proposed instructions, reasoning those instructions would inappropriately add an element to the crime charged. The court instructed the jury using the updated WPICs, and the jury convicted Knapp.

*State v. Knapp*, No. 98067-5

Knapp timely appealed, arguing the pattern jury instructions were constitutionally inadequate because, contrary to this court's decision in *W.R.*, they do not specifically instruct the jury that the State bears the burden of disproving consent beyond a reasonable doubt. Division Three of the Court of Appeals affirmed Knapp's conviction. Knapp then petitioned this court for review, which we granted. *State v. Knapp*, 195 Wn.2d 1014, 461 P.3d 1197 (2020).

ANALYSIS

The question before us is straightforward: Do Washington's updated pattern jury instructions for second degree rape by forcible compulsion adequately convey that the State bears the burden to prove lack of consent as part of its proof of the element of forcible compulsion? We hold today that they do.

In criminal trials, due process "requires that jury instructions adequately convey to the jury that the State bears the burden of proving 'every element of the crime charged beyond a reasonable doubt.'" *State v. Imokawa*, 194 Wn.2d 391, 396, 450 P.3d 159 (2019) (quoting *State v. Brown*, 147 Wn.2d 330, 339, 58 P.3d 889 (2002)). A corollary rule is that a defendant cannot be required to disprove any fact that constitutes the crime charged. So when a defendant raises a defense that would necessarily negate an element of the crime charged, the jury instructions must make clear that the State bears the burden of disproving that defense. *See W.R.*, 181 Wn.2d

7

at 763 ("[O]nce a defendant asserts a consent defense and provides sufficient evidence to support the defense, the State bears the burden of proving lack of consent as part of its proof of the element of forcible compulsion.").

"When instructing the jury that the State has the burden to disprove a defense, 'a specific instruction is preferable, but failure to provide one is not reversible per se so long as the instructions, taken as a whole, make it clear that the State has the burden.'" *Imokawa*, 194 Wn.2d at 397 (quoting *State v. Acosta*, 101 Wn.2d 612, 621, 683 P.2d 1069 (1984)). Jury instructions are constitutionally adequate "when, taken as a whole, they properly inform the jury of the applicable law, are not misleading, and permit the defendant to argue his theory of the case." *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365 (1999). Because jury instructions are statements of law, we review challenges to the accuracy and adequacy of jury instructions de novo. *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007).

Knapp challenges the trial court's instructions on the forcible compulsion element of second degree rape and consent, which followed WPIC 45.03 and 18.25. He claims our decision in *W.R.* requires the State to prove forcible compulsion *and* lack of consent, so his proposed instructions are a more accurate statement of the law. Knapp argues the pattern jury instructions given by the trial court are

constitutionally inadequate because they did not explicitly provide that the State bears the burden to prove lack of consent beyond all reasonable doubt.

Knapp's argument is flawed for three reasons. First, Knapp misunderstands our decision in *W.R.*: we did not hold that the State must prove lack of consent separate and apart from forcible compulsion but, rather, that "the State bears the burden of proving lack of consent *as part of* its proof of the element of forcible compulsion." 181 Wn.2d at 763 (emphasis added). Second, Knapp does not show the trial court's jury instructions failed to adequately convey that the State bears the burden of proof. Finally, Knapp's proposed instructions would impermissibly add lack of consent as a separate element for the crime of second degree rape by forcible compulsion. The trial court properly rejected Knapp's proposed instructions and instructed the jury according to the pattern jury instructions applicable to second degree rape by forcible compulsion.

I.    Consent and Forcible Compulsion Are Not Independent Elements of Second Degree Rape; One Negates the Other

In *W.R.*, this court overturned 25 years of precedent and recognized that "due process prohibits shifting the burden to the defendant to prove consent." 181 Wn.2d at 768. We did so in part because the United States Supreme Court had recently "clarified that the prosecution must always bear the burden of disproving a defense that necessarily negates an element of the charged offense." *Id.* at 764 (citing *Smith*

9

*State v. Knapp*, No. 98067-5

*v. United States*, 568 U.S. 106, 110, 133 S. Ct. 714, 184 L. Ed. 2d 570 (2013)). We explained that "forcible compulsion contemplates force that overcomes actual resistance or threats that place a person in actual fear[, so t]here can be no forcible compulsion when the victim consents, as there is no resistance to overcome." *Id.* at 765. In the context of rape, consent and forcible compulsion are mutually exclusive.

"Because the defense of consent necessarily negates the element of forcible compulsion," we held the "defendant cannot be burdened with proving consent by a preponderance of the evidence, as the burden must remain on the State to prove forcible compulsion beyond reasonable doubt." *Id.* at 766-67. Accordingly, "the State can require the defendant to prove that defense only to the extent of creating a reasonable doubt as to his or her guilt." *Id.* at 766 (citing *State v. Riker*, 123 Wn.2d 351, 367, 869 P.2d 43 (1994)). Once the defendant has asserted a consent defense and presented sufficient evidence to support that defense, "the State bears the burden of proving lack of consent as part of its proof of the element of forcible compulsion." *Id.* at 763.

Contrary to Knapp's claims, *W.R.* did not hold that the State must prove lack of consent *in addition to* forcible compulsion. Instead, we explained that consent and forcible compulsion are "conceptual opposites." *Id.* at 768. Evidence of consent suggests there was no forcible compulsion, and evidence of forcible compulsion

10

*State v. Knapp*, No. 98067-5

suggests there was no consent. *See id.* at 766 ("[C]redible evidence of consent necessarily raises doubt as to the defendant's guilt."). Because "force is an objective indicator of nonconsent," Washington law "do[es] not treat force and nonconsent as separate formal elements." *Id.* at 767 (citing and quoting Wallace D. Loh, *The Impact of Common Law and Reform Rape Statutes on Prosecution: An Empirical Study*, 55 WASH. L. REV. 543, 552 n. 43 (1980)).

For that reason, we observed, "It is not necessary to add a new instruction on consent" because the issue of consent inherently exists within the element of forcible compulsion. *Id.* at 767 n.3. That observation aligns with our approach to jury instructions for negating defenses in other contexts, where we have held that "although the jury was not explicitly instructed on the State's burden to disprove [the defense that negates an element of the crime]," the instructions were nevertheless constitutionally adequate because "the defense and the element are mutually exclusive." *See Imokawa*, 194 Wn.2d at 399-400.

In *State v. King*, 92 Wn.2d 541, 599 P.2d 522 (1979), we upheld a homicide conviction even though the jury was not explicitly instructed that the State bore the burden of proof to disprove the defendant's claim of self-defense. There, the trial court instructed the jury that one element of the crime was that "'the killing, not being either excusable or justifiable, was done with the intent to cause the death'" of

11

the victim. *Id.* at 544 (emphasis omitted). The trial court further instructed the jury that "'[t]he killing of a human being is justifiable when committed in the lawful defense of the slayer or of any other person in his presence or company.'" *Id.* But the trial court refused to give the defendant's proposed instruction on self-defense: "'When a defendant claims that he killed another in self-defense of his own person or person in his presence the burden is upon the State to prove beyond a reasonable doubt that there is an absence of self-defense.'" *Id.* at 543. We affirmed the conviction, explaining that "instructions Nos. 20 and 29 allocated to the State the burden of proof on the issue of self-defense and sufficiently permitted King to argue his theory of the case," even though King did not receive his proposed instruction. *Id.* at 546.

Similarly, in *Imokawa*, we affirmed convictions for vehicular homicide and vehicular assault even though the jury was not explicitly instructed that the State bore the burden to prove the absence of a superseding intervening cause. 194 Wn.2d at 403. The jury was instead instructed that the State bore the burden of proving proximate cause beyond a reasonable doubt and that proximate cause could, in some circumstances, be superseded by an intervening act. *Id.* at 395. We reasoned that "proximate cause and presence of a superseding intervening cause are mutually exclusive," so the "trial court did not need to explicitly instruct the jury that the State

12

has the burden to prove absence of superseding intervening cause." *Id.* at 402. We concluded that when "a jury is instructed as to the statutory elements of a crime, that the State bears the burden of proving all elements beyond a reasonable doubt, and that the defendant has no burden of proof, the instructions as a whole are constitutionally adequate and do not violate due process." *Id.* at 403.

The same is true here. As we explained in *W.R.*, the State's burden to prove lack of consent is wholly contained within its burden to prove forcible compulsion. Like proximate cause and superseding intervening cause, consent and forcible compulsion are mutually exclusive. The two cannot coexist, so there is no reason to treat them as separate, independent elements. The trial court properly instructed Knapp's jury on the statutory elements of second degree rape, explained that the State bears the burden of proving all elements beyond a reasonable doubt, and acknowledged that "[e]vidence of consent may be taken into consideration in determining whether the defendant used forcible compulsion to have [sexual intercourse]." WPIC 18.25, at 304 (second alteration in original). Under our precedent, these instructions were constitutionally adequate.

Nevertheless, Knapp argues his jury should have been explicitly instructed that the State bears the burden of proving lack of consent beyond a reasonable doubt because that is the only way to ensure the burden is not impermissibly shifted to the

defendant. Knapp is mistaken: under our precedent, the jury instructions given at his trial made the State's burden clear.

II.      The Jury Instructions Properly Placed the Burden of Proving Each Element of Second Degree Rape on the State and Did Not Shift the Burden of Proving Consent to Knapp

We have long held that "'a specific instruction is preferable'" when instructing the jury that the State bears the burden of proving the absence of a negating defense. *Imokawa*, 194 Wn.2d at 397 (quoting *Acosta*, 101 Wn.2d at 621 (distinguishing *State v. McCullum*, 98 Wn.2d 484, 656 P.2d 1064 (1983) (plurality opinion))). But "'failure to provide one is not reversible per se so long as the instructions, taken as a whole, make it clear that the State has the burden.'" *Id.* (quoting *Acosta*, 101 Wn.2d at 621). "[S]o long as the burden is not shifted to the defendant in the instructions, the jury need not be instructed as to the State's burden to prove absence of a defense; it need only be specifically instructed on the essential elements of the crime." *Id.* at 400-01.

Here, the trial court properly instructed the jury that the State bore the burden of proof on each element of second degree rape by forcible compulsion and that Knapp's consent defense could prevent the State from meeting that burden. The trial court's instructions on consent were based on WPIC 18.25, as amended following our decision in *W.R.* That pattern instruction—designed to instruct the jury on the

*State v. Knapp*, No. 98067-5

defense of consent in first and second degree rape—provides that "[e]vidence of consent may be taken into consideration in determining whether the defendant used forcible compulsion to have [sexual intercourse]." WPIC 18.25, at 304 (second alteration in original).

Knapp complains WPIC 18.25 inappropriately relieves the State of its burden to prove forcible compulsion by failing to clearly and unambiguously set forth the State's burden to prove lack of consent. He acknowledges our recent holding in *Imokawa* that trial courts do not need to explicitly instruct the jury that the State has the burden to prove the absence of a negating defense, but he attempts to distinguish that case because the challenged instructions there included a definition relevant to the defense and WPIC 18.25 does not define consent in the same manner. But this argument is unavailing.

What matters is not whether one jury instruction provides a definition, but whether the instructions as a whole "properly inform the jury of the applicable law, are not misleading, and permit the defendant to argue his theory of the case." *Tili*, 139 Wn.2d at 12. Here, reading WPIC 18.25 in the context of the other relevant jury instructions, the trial court's instructions clearly meet this standard. WPIC 41.02 accurately explains the elements of second degree rape under RCW 9A.44.010(6), including forcible compulsion, and puts the burden of proof squarely on the State.

15

WPIC 45.03 defines "forcible compulsion" according to statute. And WPIC 18.25 explains evidence of consent is relevant to "determining whether the defendant used forcible compulsion to have [sexual intercourse]." These clear, accurate descriptions of the law were not misleading.

Perhaps most importantly, these instructions plainly allowed Knapp to argue his theory of the case. Knapp's defense was that the sexual intercourse was consensual, and the instructions allowed him to argue that B.S.'s alleged consent meant the State failed to prove forcible compulsion beyond a reasonable doubt. The jury was unconvinced by Knapp's arguments, but that is not the fault of the trial court's jury instructions.

III.   Knapp's Proposed Jury Instruction Would Impermissibly Add an Element to Second Degree Rape and Reflect Antiquated Notions of How Victims of Sexual Assault Should Act

As we know, lack of consent is not a separate and distinct element of second degree rape by forcible compulsion. *W.R.*, 181 Wn.2d at 763 ("the State bears the burden of proving lack of consent *as part of* its proof of the element of forcible compulsion" (emphasis added)). But Knapp's proposed instruction on forcible compulsion, which includes the entirety of WPIC 45.03, would have explicitly added consent as an additional element:

> Forcible compulsion exists when *both of the following elements* are present:
>      (1)     *a person has not consented to sexual intercourse,* [*and*]

16

*State v. Knapp*, No. 98067-5

> (2)     that person has been subjected to physical force that overcomes resistance, or a threat . . . .

CP at 411 (emphasis added). Under this instruction, the State would have to prove lack of consent as a distinct element *in addition* to its proof of forcible compulsion. Neither RCW 9A.44.050 nor *W.R.* makes lack of consent a distinct element of the crime of second degree rape by forcible compulsion. Knapp's proposed instruction effectively seeks to amend the law and add a new element to the State's burden. The trial court properly rejected that instruction as an incorrect statement of law.

Worse, Knapp's proposed instruction represents a retreat from current law back to antiquated notions of the rape survivor's "appropriate" behavior, by shifting the focus of the trial to the survivor's (in)actions. The dissent in *W.R.* warned against the consequences of such a retreat: "wrongfully put[ting] the victim's actions and reputation on trial" makes victims "less likely to report the rape" because "they may feel that they themselves are on trial." 181 Wn.2d at 772, 773 (Owens, J., dissenting). By adding a separate requirement to prove an element of lack of consent, Knapp's proposed instruction would shift the focus of trial "to [the victim's] actions rather than the crime against them." *Id.* at 773. Indeed, that is precisely what Knapp's strategy was at trial and during closing arguments. *See* 4 VRP at 717 ("So, let's talk about what she said[,] . . . that during this allegation she started screaming, and she started screaming because she heard the neighbors talking outside her mobile home

17

. . . . They didn't come running to the door, banging on the door. They didn't hear her. She can hear them talking, but they can't hear her screaming. It's a problem [for the State's ability to prove lack of consent].").

Our decision in *W.R.* specifically and intentionally avoided that outcome by declining to recognize lack of consent as a separate and distinct element of second degree rape by forcible compulsion. We explained "that the State's burden to prove forcible compulsion encompasses the concept of nonconsent [and] is consistent with rape reform laws" by "'focus[ing] more on the actor's use or threat of force rather than the victim's conduct as the external criterion of nonconsent.'" *Id.* at 767 (quoting Loh, *supra*, at 550). By locating the State's burden to prove lack of consent squarely within its burden to prove forcible compulsion, we maintained the proper focus of rape prosecutions on the defendant's conduct. In this way, *W.R.*'s holding balances the defendant's due process rights with "'society's interest in accurately identifying perpetrators of rape, not in reinforcing traditional assumptions regarding appropriate behavior of [virtuous] [men and] women.'" *Id.* at 773 (alterations in original) (internal quotation marks omitted) (quoting *State v. Camara*, 113 Wn.2d 631, 639, 781 P.2d 483 (1989); *Camara* was overruled in part by *W.R.*, 181 Wn.2d 757).

Knapp's proposed instruction would upset that delicate balance and impermissibly add an element to the crime of second degree rape by forcible compulsion. The trial court properly rejected that erroneous instruction in favor of the applicable pattern jury instructions.

## CONCLUSION

Because the trial court's instructions properly informed the jury of the State's burden of proving second degree rape by forcible compulsion, were not misleading, and permitted Knapp to argue his theory of the case, we hold those instructions were constitutionally adequate. We affirm the Court of Appeals and uphold Knapp's conviction.

Stephens, J.

WE CONCUR:

González, C.J.

Johnson, J.

Yu, J.

Madsen, J.

Montoya-Lewis, J.

Owens, J.

Whitener, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Knapp (Leland Hohn, IV)*, No. 98067-5
(Gordon McCloud, J., concurring)

No. 98067-5

GORDON McCLOUD, J. (concurring)—I agree with the majority that, read

as a whole, the instructions at Leland Hohn Knapp's trial "properly inform[ed] the

jury of the applicable law, [were] not misleading, and permit[ted] the defendant to

argue his theory of the case." *State v. Tili*, 139 Wn.2d 107, 126, 985 P.2d 365

(1999) (citing *State v. Theroff*, 95 Wn.2d 385, 389, 622 P.2d 1240 (1980));

majority at 19. But I write separately to emphasize that trial courts retain discretion

to instruct juries on the statutory definition of consent and the parties' burdens with

regard to that defense.

I therefore respectfully concur.

ANALYSIS

I.      The Jury Instructions Were Constitutionally Adequate

I agree with the majority that taken as a whole, the jury instructions in this

case were constitutionally adequate and did not impermissibly shift the burden of

proving consent to the defendant.

1

*State v. Knapp (Leland Hohn, IV)*, No. 98067-5
(Gordon McCloud, J., concurring)

As the majority explains, the parties do not contest the fact that Knapp and B.S. had sexual intercourse on February 7, 2016. The parties do, however, contest the details of what happened and whether the acts were consensual. Majority at 2-5. Knapp's defense theory was that the acts were all consensual. 4 Verbatim Report of Proceedings (VRP) (Feb. 7, 2018) at 637, 643, 711.

The jury received the following instructions relevant to the elements of rape that bear on consent. Instruction 7 stated the elements of second degree rape in violation of RCW 9A.44.050 as follows:

> To convict the defendant of the crime of rape in the second degree, each of the following three elements of the crime must be proved beyond a reasonable doubt:
>
> . . . .
>
> (2) That the sexual intercourse occurred by forcible compulsion;
>
> . . . .

Clerk's Papers (CP) at 427; *cf.* WPIC[1] 41.02, at 833-34. Instruction 9 defined "forcible compulsion":

> Forcible compulsion means physical force that overcomes resistance, or a threat, express or implied, that places a person in fear of death or physical injury to oneself or another person or in fear of being kidnapped or that another person will be kidnapped.

---

[1] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL (4th ed. 2016) (WPIC).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

CP at 429; *cf.* WPIC 41.02, at 833-34. And instruction 10 stated the following

about consent:

> Evidence of consent may be taken into consideration in determining
> whether the defendant used forcible compulsion to have sexual
> intercourse.

CP at 430; *cf.* WPIC 18.25, at 304.

Knapp argued that instructions 9 and 10 did not make clear that the State is

the party that bears the burden of proving lack of consent. Majority at 6; 4 VRP

(Feb. 7, 2018) at 680-81. He offered two alternative instructions, discussed *infra*

Part II.  The trial court rejected them. 4 VRP (Feb. 7, 2018) at 682; CP at 411, 412.

As a result, the jury received no instruction at all on the definition of consent or the

burden of proof on lack of consent.

Knapp argues that this made the court's instructions misleading.  He

contends that those instructions conflicted with *State v. W.R.*, which held that

"once a defendant asserts a consent defense and provides sufficient evidence to

support the defense, the State bears the burden of proving lack of consent as part of

its proof of the element of forcible compulsion." 181 Wn.2d 757, 763, 336 P.3d

1134 (2014).

Like the majority, I disagree. In *W.R.*, we made clear that a finding of

forcible compulsion cannot coexist with a finding of consent: "no circumstance

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

could exist where a defendant forcibly compels a victim to engage in consensual

sexual intercourse." *Id.* at 768. For that reason, we held that making the defendant

bear the burden of proving consent by a preponderance of the evidence violates

due process clause protections. *Id.* at 765. Instead, "[w]hile the defendant may be

tasked with producing evidence to put consent in issue, such evidence need only

create reasonable doubt as to the victim's consent." *Id.* at 768.

That holding means that if the State proves forcible compulsion, it has

necessarily proved lack of consent. *See id.* at 767. Thus, the court need not always

provide an additional instruction defining consent in a second degree rape

prosecution. *Id.* at 767 n.3. Instead, it is sufficient for the court to simply instruct

the jury on the elements of the crime. *Id.* And while it is often preferable for the

court to explicitly tell the jury that the State bears the burden of disproving a

negating defense, "'[s]o long as the burden is not shifted to the defendant in

the instructions, the jury *need not* be instructed as to the State's burden to prove

absence of a defense; it need only be specifically instructed on the essential

elements of the crime.'" Majority at 14 (quoting *State v. Imokawa*, 194 Wn.2d 391,

400-01, 450 P.3d 159 (2019) (emphasis added)).

Here, the trial court instructed the jury on the elements of the crime, on the

fact that the State bore the burden of proving each element beyond a reasonable

*State v. Knapp (Leland Hohn, IV)*, No. 98067-5
(Gordon McCloud, J., concurring)

doubt, and on the definition of forcible compulsion. CP at 427, 429. I therefore

agree with the majority that under our precedent, the instructions were

constitutionally adequate.

    II.    Trial Courts Must, and Do, Retain the Discretion To Instruct Juries on the Definition of Consent and on the State's Burden of Proof Regarding Negating Defenses

Because the conclusion that the jury instructions were constitutionally

adequate is sufficient to answer the question before us, I would end the discussion

there.

In its Part III, however, the majority goes on to address Knapp's first

proposed instruction, which was rejected by the trial court. Majority at 16-17. That

proposed instruction stated, in relevant part,

> Forcible compulsion exists when both of the following elements are present:
>
>     (1) a person has not consented to sexual intercourse,
>     (2) that person has been subjected to physical force that overcomes resistance.

CP at 411. I agree with the majority that the trial court properly rejected this

instruction because it incorrectly states that lack of consent and forcible

compulsion are separate "elements." Majority at 17.  In fact, as discussed above,

consent and forcible compulsion are conceptual opposites:  by proving forcible

5

*State v. Knapp (Leland Hohn, IV)*, No. 98067-5
(Gordon McCloud, J., concurring)

compulsion, the State necessarily proves lack of consent. *W.R.*, 181 Wn.2d at 767; *supra* Part I.

The majority does not address Knapp's second proposed instruction, which would have instructed the jury on the definition of "consent" and the State's burden of proof. That proposed instruction read:

> Consent means that at the time of the act of sexual intercourse there are actual words or conduct indicating a freely given agreement to have sexual intercourse.  The Defendant has no burden to prove that the sexual intercourse was consensual.  It is the State's burden to prove the absence of consent beyond a reasonable doubt.

CP at 412.

I write to emphasize that trial courts retain the discretion to instruct juries in this manner. By leaving the second proposed instruction unaddressed, I believe the majority's Part III—even though it is dicta—creates potential confusion.

Unlike his first proposed instruction, Knapp's second proposed instruction, alone, does not misstate the law or "impermissibly add an element to the crime." Majority at 17, 18. In fact, Knapp's second proposed instruction would have provided the jury with the *statutory* definition of consent and the accurate statement of the parties' burdens with regard to the defense of consent.

This is clear, first, from the fact that the first sentence of the proposed instruction was identical in all relevant respects to RCW 9A.44.010(7), the

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*State v. Knapp (Leland Hohn, IV)*, No. 98067-5
(Gordon McCloud, J., concurring)

statutory definition of consent.[2] It is thus an accurate statement of the law that was relevant to an issue in the case. The second and third sentences of the proposed instruction correctly explained the parties' burdens of proof with regard to the negating defense of consent. In *W.R.*, we plainly held that because "consent negates the element of forcible compulsion," "once a defendant asserts a consent defense and provides sufficient evidence to support the defense, the State bears the burden of proving lack of consent as part of its proof of the element of forcible compulsion." 181 Wn.2d at 763. That is precisely what Knapp's proposed instruction would have stated: "The Defendant has no burden to prove that the sexual intercourse was consensual. It is the State's burden to prove the absence of consent beyond a reasonable doubt." CP at 412. Because consent had been raised as a defense, the State had the burden to disprove it as part of its burden to prove the element of forcible compulsion.

While *W.R.* held that "[i]t is not *necessary* to add a new instruction on consent simply because evidence of consent is produced," 181 Wn.2d at 767 n.3

---

[2] RCW 9A.44.010(7) provides, "'Consent' means that at the time of the act of sexual intercourse or sexual contact there are actual words or conduct indicating freely given agreement to have sexual intercourse or sexual contact." WPIC 45.04, at 920, is nearly identical. Presumably because this was a rape prosecution rather than a prosecution for indecent liberties, Knapp's proposed instruction omitted the phrase "or sexual contact" from his proposed instruction.

7

*State v. Knapp (Leland Hohn, IV)*, No. 98067-5
(Gordon McCloud, J., concurring)

(emphasis added), *W.R.* did *not* hold that courts are barred from providing such an instruction. Unlike Knapp's first proposed instruction, which mischaracterized forcible compulsion and lack of consent as separate elements, his second proposed instruction would not have improperly added an element for the State to prove. Instead, it would have provided a correct, relevant statement of the law and would have represented the "'preferable'" approach of giving a "'specific instruction'" on the State's burden to disprove a defense. Majority at 8 (quoting *Imokawa*, 194 Wn.2d at 397).

There are compelling reasons why a trial court might find it proper to give such an instruction on consent—and I write separately to make clear that this option remains open.[3] Unlike other legal concepts (like those cited by the majority

---

[3] As the majority explains, Knapp was tried once before; he sought and obtained a new trial because the presiding juror revealed she had made material misrepresentations during voir dire. Majority at 5 n.2; 3 VRP (Dec. 6, 2017) at 424. That first trial is not at issue here. But interestingly, the judge at Knapp's first trial agreed with Knapp that it was appropriate to instruct the jury on consent, reasoning that

> [issues concerning the burden of proof are] of constitutional dimension[.] I don't see how you can ignore that and not instruct the jury on consent. It just doesn't seem logical to me and doesn't seem fair at all to a defendant in these circumstances.

> You know, we have in front of us a case where she clearly says, "He exercised forcible compulsion, and I did not consent," and he clearly says, "She consented." I think this—the facts of this case do cry out for me to instruct in this way.

8

*State v. Knapp (Leland Hohn, IV)*, No. 98067-5
(Gordon McCloud, J., concurring)

in its discussion of negating elements), rape has its own charged history that has

led to significant confusion about what constitutes "consent." Lack of consent has

always been "'the basic substantive element of the crime'" of rape. *State v. Lynch*,

178 Wn.2d 487, 512, 309 P.3d 482 (2013) (Gordon McCloud, J., concurring)

(quoting Wallace Loh, *The Impact of Common Law and Reform Rape Statutes on*

*Prosecution: An Empirical Study,* 55 WASH. L. REV. 543, 557 (1980)); *W.R.*, 181

Wn.2d at 767. But the way the legal system has defined and measured consent has

changed significantly, even in recent memory. Today, our law recognizes that if a

person does not affirmatively communicate their freely given agreement to

participate in sexual intercourse, they have not consented. RCW 9A.44.010(7). But

it wasn't long ago that the law primarily focused on the alleged victim's resistance

as the objective measure of nonconsent. *State v. Severns*, 13 Wn.2d 542, 544, 125

P.2d 659 (1942) (element of rape was "forcibly overcoming [the alleged victim's]

resistance"); *State v. Mertz*, 129 Wash. 420, 421, 225 P. 62 (1924) (jury properly

---

2 VRP (July 27, 2017) at 349-50. Accordingly, the judge at Knapp's first trial gave an instruction on consent following WPIC 45.04, at 920, which is essentially identical to the statutory definition of consent. 2 VRP (July 27, 2017) at 358. The court also gave a modified version of WPIC 45.03, at 918, the definition of "forcible compulsion," which explicitly stated that consent negates forcible compulsion. 2 VRP (July 27, 2017) at 358 ("Forcible compulsion means the absence of consent together with physical force that overcomes resistance or a threat . . . ."); *see also id.* at 345.

9

instructed that "'in order to constitute the crime of rape[,] force must be used by the male, and that force must be sufficient to overcome the will and consent of the prosecuting witness'"). Even under the rape reform statutes of 1975, a person could not be raped by their spouse, under the law, because marriage meant consent to sexual intercourse. *See* LAWS OF 1975, 1st Ex. Sess., ch. 14, §§ 4, 5, 6, 8, 9. Although the marriage defense has been abolished with regard to certain sex offenses,[4] it remains with regard to others. At the time of this writing, a bill is pending in the legislature that would abolish the remaining vestiges of the marriage defense.[5]

---

[4] In 1983, the legislature abolished the marital defense to first and second degree rape. *See* LAWS OF 1983, ch. 118, §§ 1, 2 (amending RCW 9A.44.040(1) and RCW 9A.44.050(1)). In 2013, the legislature abolished the marital defense to third degree rape and to indecent liberties by forcible compulsion when the victim is incapable of consent or when the perpetrator is a health care provider and the victim is a patient. LAWS OF 2013, ch. 94, §§ 1, 2 (amending RCW 9A.44.060(1) and RCW 9A.44.100(1)).

[5] S.B. 5177 deletes language defining certain sex offenses in terms of whether the perpetrator was married to the victim. Many sex offense statutes still contain such language, including RCW 9A.44.050(1)(c), (e), (f) (second degree rape of a person who is developmentally disabled, is a resident of a facility for persons with a mental disorder or chemical dependency, or is a frail elder or vulnerable adult), .073 (first degree rape of a child), .076 (second degree rape of a child), .079 (third degree rape of a child), .083 (first degree child molestation), .086 (second degree child molestation), .089 (third degree child molestation), .093 (first degree sexual misconduct with a minor), .096 (second degree sexual misconduct with a minor), and .100 (indecent liberties with a person who is developmentally disabled, is a resident of a facility for persons with a mental disorder or chemical dependency, or is a frail elder or vulnerable adult). *See* S.B. 5177, 67th Leg., Reg. Sess. (Wash. 2021).

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

In the recent past, too, even when the defendant was accused of using physical violence to subdue the complainant, questions by both parties often centered on that complainant's sexual history and reputation, whether her clothes signaled "permission," or whether the two had had prior sexual contact—all based on the obviously faulty assumption that this information was relevant to whether the complainant consented on the occasion in question. Rape shield statutes, which make most evidence regarding an alleged victim's sexual history inadmissible in a rape prosecution, were enacted relatively recently as cultural attitudes shifted toward an acknowledgment that evidence of prior consent to sexual conduct "is usually of little or no probative value in predicting the victim's consent to sexual conduct on the occasion in question." *State v. Hudlow*, 99 Wn.2d 1, 9, 659 P.2d 514 (1983) (explaining that adoption of rape shield statutes nationwide is a "recent trend, reversing years of the opposite rule" (footnote omitted)); *see also* RCW 9A.44.030 (Washington's rape shield statute, first enacted in 1975).

These recent, significant, and ongoing developments in the legal system's understanding of consent illustrate why we should not foreclose a trial court's ability to instruct a jury on the accurate, statutory definition of consent.

What is more, providing the modern, affirmative statutory definition of consent in the context of a second degree rape prosecution like Knapp's could help

11

*State v. Knapp (Leland Hohn, IV)*, No. 98067-5
(Gordon McCloud, J., concurring)

ensure that the jury does *not* make decisions based on "antiquated notions of the rape survivor's "appropriate" behavior." Majority at 17. As discussed above, the common law approach to rape certainly did focus on the survivor's resistance as an objective measure of nonconsent. But the current statutory definition of consent does *not* do that. Instead, it focuses on whether a person's affirmative words or actions indicate a "freely given agreement" to sex. RCW 9A.44.010(7). Under this definition, consent logically *cannot* be inferred from a person's failure to physically resist. Indeed, the only remaining reference to resistance in the statutes relevant to this case is contained in the definition of forcible compulsion itself, a fact the majority doesn't address. RCW 9A.44.010(6) ("forcible compulsion" encompasses "physical force which overcomes resistance . . ."). Thus, providing our statutory definition of consent would not shift the focus from the actions of the complainant to the actions of the defendant.

I view the majority's Part III as an unnecessary addition to the opinion—that is, as dicta—but I believe its focus only on the first, erroneous proposed instruction is potentially misleading. Courts must—and do—retain the discretion to instruct the jury on the statutory definition of consent and on the parties' burdens regarding the negating defense of consent as they strive to ensure that jury instructions "properly inform the jury of the applicable law, are not misleading, and permit the

12

*State v. Knapp (Leland Hohn, IV)*, No. 98067-5
(Gordon McCloud, J., concurring)

defendant to argue his theory of the case." *Tili*, 139 Wn.2d at 126 (citing

*Theroff*, 95 Wn.2d at 389).

CONCLUSION

I agree that the actual jury instructions given in this case were

constitutionally sufficient. But trial courts should, and do, retain the ability to

provide accurate instructions to the jury on the statutory definition of consent and

on the parties' burdens related to consent, when proper. I disagree with any

suggestion in the majority opinion to the contrary.

I therefore respectfully concur.

_____
Gordon McCloud, J.

13