**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

MARCH 26, 2026

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 26, 2026

SARAH R. PENDLETON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 103908-5 |
| | ) | |
| Petitioner, | ) | En Banc |
| | ) | |
| v. | ) | |
| | ) | Filed: <u>March 26, 2026</u> |
| JOHN RAY STEARNS, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

MUNGIA, J.—As noted in a learned treatise, ER 404(b) has two core principles.

The first core principle of ER 404(b) is that the defendant's other misconduct is inadmissible to show the defendant's propensity to engage in criminal activities. Because the State has the burden to prove that the current offense occurred beyond a reasonable doubt, the law is uncomfortable with the notion that "once a criminal, always a criminal." 5D ELIZABETH A. TURNER & KARL B. TEGLAND, WASHINGTON PRACTICE, COURTROOM HANDBOOK ON WASHINGTON EVIDENCE § 404:8, at 192 (2025-2026 ed.).

But the second core principle is that a defendant's other misconduct is potentially admissible for other, more limited purposes. *Id.*

There is not, however, a "bright line [that] separates what is forbidden from what is allowed." *Id.* In determining what is allowed and what is not allowed, a trial court must exercise its sound discretion, and we will reverse a trial court's decision only if it has abused that discretion.

This appeal allows us to provide further guidance to trial courts when exercising that discretion in determining whether other wrongful acts are admissible to show a common scheme or plan. We have held that to show a common scheme or plan, the State must show "'markedly similar acts of misconduct against similar victims under similar circumstances.'" *State v. DeVincentis*, 150 Wn.2d 11, 19, 74 P.3d 119 (2003) (internal quotation marks omitted) (quoting *State v. Lough*, 125 Wn.2d 847, 856, 889 P.2d 487 (1995)).

We now clarify that this test does not require markedly similar victims. Here, the victims shared only broad similarities—they were all women and were all attacked in the same neighborhood. These shared characteristics are sufficiently similar to uphold the trial court's discretionary ruling to admit the evidence under ER 404(b) when considered with the similarity of the misconduct and circumstances of the other wrongful conduct.

Here, the trial court considered the similarities of the defendant's other wrongful conduct and concluded that they showed a common scheme or plan. The Court of Appeals reversed, ruling that the trial court abused its discretion. We disagree. The trial court did not abuse its discretion in admitting the evidence of other wrongful conduct

under the common scheme or plan exception. Accordingly, we reverse the Court of

Appeals and affirm the trial court's ruling.

I

FACTUAL HISTORY

In 1998, Crystal Williams, a 33-year-old Black woman, was found dead in Lavizzo

Park in Seattle's Central District. Ms. Williams worked as a sex worker. She was last seen

in the early morning hours, walking in the direction of the park with a man. Ms. Williams'

autopsy showed that she had been strangled and died from a fractured skull. She was found

with her pants pulled down, exposing her genitals, and her shirt pulled up, exposing her bra.

She had no defensive wounds, suggesting that she was not conscious when she was raped.

Semen was found in her vagina, and more semen was found in a discarded condom near her

body. The pockets of her jacket had been turned inside out.

The police identified several suspects. However, none matched the DNA evidence.

The case then went cold. Six years later, Mr. Stearns' DNA matched the DNA in the semen

found in Ms. Williams' vagina and in the discarded condom. Police interviewed

Mr. Stearns, who was then serving time in prison for another crime. The prosecutor

determined there was probable cause to charge Mr. Stearns with Ms. Williams' murder but

failed to bring charges until 12 years later.

II

PROCEDURAL HISTORY

The State charged Mr. Stearns with felony murder in the first degree, based on first-

and second-degree rape, with sexual motivation. The case went to trial and resulted in a

hung jury. On retrial, the jury found Mr. Stearns guilty. Mr. Stearns made several assignments of error on appeal to Division One of the Court of Appeals: (1) his due process rights were violated by the 12-year preaccusatorial delay, (2) the trial court erred in introducing evidence of other wrongful acts, (3) the trial court violated CrR 6.15 by telling jurors they could "'tune out'" during oral instructions, and (4) the prosecutor committed misconduct requiring reversal. Br. of Appellant at 2-3 (Wash. Ct. App. No. 82125-3-I (2021)).

The Court of Appeals reversed Mr. Stearns' conviction on the preaccusatorial delay issue only, holding that Mr. Stearns' due process rights were violated. *State v. Stearns*, 23 Wn. App. 2d 580, 517 P.3d 467 (2022). This court granted review and reversed, remanding back to the Court of Appeals. *State v. Stearns*, 2 Wn.2d 869, 545 P.3d 320 (2024).

On remand, the Court of Appeals considered the remaining issues. The court affirmed the trial court's ruling in part but reversed in part. The court concluded that the trial court erred in admitting evidence of other wrongful acts. *State v. Stearns*, No. 82125-3-I (Wash. Ct. App. Feb. 3, 2025) (unpublished), https://www.courts.wa.gov/opinions/821253.pdf.

ER 404(b) Ruling

At trial, the State offered, and the court admitted over Mr. Stearns' objection, evidence of two of Mr. Stearns' prior rape convictions.[1]

---

[1] The trial court denied the admission of a third prior rape conviction that the State sought to introduce.

The first conviction was based on Mr. Stearns' guilty plea to raping BG in 1981.  BG was a 20-year-old woman whom Mr. Stearns knew through her brother.  Mr. Stearns knocked on BG's door around midnight, saying he was being chased by someone.  BG let him in, and they watched television together.  Mr. Stearns hit BG on the head with a whiskey bottle.  He then vaginally raped her three times.  After being raped, BG tried to escape.  Mr. Stearns hit her on the head again and strangled her.  BG pretended to lose consciousness and then pretended to wake up with no memory of the rape.  Mr. Stearns left, returning a few minutes later saying he had forgotten his radio.  He then took BG's television and left the apartment.

The second conviction was based on Mr. Stearns' guilty plea to robbery and attempted rape of DH in 1989.  DH was a 41-year-old woman who did not know Mr. Stearns.  Around 5:00 p.m. she took the bus home from work.  As she left the bus, she passed Mr. Stearns, who was lying in the gutter on the side of the street.  DH walked into the street to give Mr. Stearns a wide berth.  Mr. Stearns got up and attacked her from behind.  Mr. Stearns hit DH on the head with his fist, strangled her, threw her down on the street, and attempted to digitally penetrate her vagina.  Mr. Stearns was dragging DH away from the road when his brother intervened, allowing DH to escape.  Mr. Stearns was later found with some of DH's belongings.

The State sought to admit these prior acts under the common scheme or plan exception to ER 404(b) to establish forcible compulsion and to rebut the defense of consent.  Defense counsel objected, arguing that the other wrongful acts were not part of a common

scheme or plan and that the evidence was unfairly prejudicial. The trial court overruled the objection, concluding that the probative value of the evidence outweighed any prejudice and that the court would give a limiting instruction to the jury about the purpose of the admitted evidence. The trial court stated that the ER 404(b) evidence's relevance to prove forcible compulsion and rebut Mr. Stearns' claim of consent was "critical" to its ruling. 2 Verbatim Rep. of Proc. (Jan. 15, 2020) (VRP) at 150. The trial court stated:

> I think it's clear that the probative value in the 1981 case, and in the 1989 case far outweigh the prejudicial effect assuming there will be a limiting instruction given to the jury. I disagree with defense that juries do not listen to limiting instructions. In fact, I think juries are exceptionally careful in King County. I have sat as a visiting judge in other counties, and, frankly, I think we have a very fair population or they are not big fans of the police. They are not big fans of the prosecutor's office, and they are quick to hold the State accountable, and I also believe that they do follow the law when they are given a limiting instruction.

*Id*. at 152.

BG and DH both testified at trial. The trial court gave the following limiting instruction:

> Certain evidence has been admitted in this case for only a limited purpose. This evidence consists of:
>
> > 1) The testimony of [BG] regarding Mr. Stearns 1981 Rape in the Second Degree Conviction and the stipulation regarding that conviction; and
> >
> > 2) The testimony of [DH] regarding Mr. Stearns 1989 Attempted Rape in the Second Degree and Robbery in the First Degree convictions and stipulation regarding that conviction.
>
> This evidence may be considered by you only for the purpose of whether the defendant's prior conduct establishes a common scheme or plan, or to establish forcible compulsion, with respect to conduct charged by the State in

6

this case. You may not consider it for any other purpose. Any discussion of the evidence during your deliberations must be consistent with this limitation.

Clerk's Papers at 369.

The Court of Appeals held that the trial court abused its discretion in admitting evidence of the prior rapes under the common scheme or plan exception to ER 404(b). The Court of Appeals concluded that the trial court incorrectly interpreted the case law around the ER 404(b) common scheme or plan exception, and that the court made improper considerations as to prejudice.

We reverse the Court of Appeals. The trial court did not abuse its discretion in admitting evidence of the prior rapes under ER 404(b) to establish forcible compulsion and to rebut the defense of consent.

### III
### WE REVIEW FOR ABUSE OF DISCRETION WHETHER THE TRIAL COURT PROPERLY ADMITTED EVIDENCE OF OTHER WRONGFUL ACTS

We review de novo whether a court has correctly interpreted an evidentiary rule. *DeVincentis*, 150 Wn.2d at 17. If a rule has been correctly interpreted, we review a trial court's application of the rule for abuse of discretion. *Id.* "A trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons." *State v. Lord*, 161 Wn.2d 276, 283-84, 165 P.3d 1251 (2007). Alternatively, a court abuses its discretion when no reasonable judge would rule as the trial court did. *State v. Vy Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

Under ER 404(b), a trial court may admit the defendant's other wrongful acts to show a common plan or scheme if the other wrongful acts are

> (1) proved by a preponderance of the evidence, (2) admitted for the purpose of proving a common plan or scheme, (3) relevant to prove an element of the crime charged or to rebut a defense, and (4) more probative than prejudicial.

*Lough*, 125 Wn.2d at 852.

A court may not admit evidence of a defendant's other wrongful acts to show that the defendant has a propensity for criminal behavior. ER 404(b). The reason for this prohibition is the risk that the jury will simply punish a defendant for their other wrongful acts or will assume they committed the current alleged criminal act. As stated in *Bowen*:

> First, such evidence is highly prejudicial because the possibility exists that the jury "will vote to convict, not because they find the defendant guilty of the charged crime beyond a reasonable doubt, but because they believe the defendant deserves to be punished for a series of immoral actions." Second, the jury may place undue weight or "overestimate" the probative value of the other prior acts. Overestimation problems are especially acute where the prior acts are similar to the charged crime. Finally, introduction of other acts of misconduct inevitably shifts the jury's attention to the defendant's general propensity for criminality, the forbidden inference; thus, the normal "presumption of innocence" is stripped away.

*State v. Bowen*, 48 Wn. App. 187, 195-96, 738 P.2d 316 (1987) (citations omitted) (quoting ROBERT O. LEMPERT & STEPHEN A. SALTZBURG, A MODERN APPROACH TO EVIDENCE 218, 219 (1982)), *abrogated on other grounds by Lough*, 125 Wn.2d 847.

Thus, we remind trial courts that in determining whether to admit evidence of other wrongful acts under ER 404(b), trial courts must start with the presumption that other wrongful acts are inadmissible. *DeVincentis*, 150 Wn.2d at 17. Evidence of a defendant's prior sexual assault is particularly prejudicial. *State v. Saltarelli*, 98 Wn.2d 358, 363, 655

8

P.2d 697 (1982). If there is a doubt as to whether other wrongful acts should be admitted, that doubt should be resolved in favor of the defendant. *State v. Smith*, 106 Wn.2d 772, 776, 725 P.2d 951 (1986).

Mr. Stearns argues that the acts were admitted for an improper purpose and that they do not meet the ER 404(b) exception for common scheme or plan. He claims that prong two of the analysis is not satisfied: the State failed to establish that the prior two convictions showed a common scheme or plan. Mr. Stearns also argues the court abused its discretion in analyzing the "prejudice prong," prong four. He argues that the probative value of the other wrongful conduct was outweighed by the unfair prejudice of admitting that evidence.

IV
TO ANALYZE COMMON SCHEME OR PLAN, COURTS MUST CONSIDER THE ACTS, THE
VICTIMS, AND THE CIRCUMSTANCES OF THE CRIMES

Mr. Stearns challenges the second prong of the ER 404(b) test: whether the acts sought to be admitted show a common scheme or plan. Evidence may be admitted under this exception when a person uses one plan to repeatedly commit separate but very similar crimes. *Lough*, 125 Wn.2d at 855. The separate crimes do not have to be identical, but we have previously said they must be "'markedly similar acts of misconduct against similar victims under similar circumstances.'" *DeVincentis*, 150 Wn.2d at 19 (internal quotation marks omitted) (quoting *Lough*, 125 Wn.2d at 856). Further, the acts must have "'such a *concurrence of common features*'" that they are naturally explained as being part of a common plan. *Id.* (internal quotation marks omitted) (quoting *Lough*, 125 Wn.2d at 856).

Neither the acts nor the plan needs to be particularly unique. *Id.* The leading cases discussing the common scheme or plan exception are illustrative:

In *Lough*, prior sexual assaults were admitted as evidence under the common scheme or plan exception to ER 404(b). Mr. Lough was a paramedic who was accused of drugging and raping P.A. *Lough*, 125 Wn.2d at 849. Mr. Lough befriended P.A. at an emergency medicine class he taught. *Id.* They went on a date at her home, where he mixed a drink for her. *Id.* Shortly after drinking it she became dizzy, disoriented, and suffered memory loss. *Id.* She testified that she had moments of lucidity where she recalled her sweatpants were pulled down and Mr. Lough's genitals were in her hands and by her face. *Id.* When she woke up Mr. Lough was gone, and she was naked from the waist down. *Id.* Mr. Lough denied drugging P.A. and claimed that they had consensual sex. *Id.*

The trial court admitted evidence that Mr. Lough drugged and raped four other women in a similar manner. Each incident involved a woman with whom Mr. Lough was in a romantic relationship. *Id.* at 850-51. In each incident he offered the woman a drink or medicine, and they woke up later with amnesia, in pain, and often bleeding vaginally and anally. *Id.* We held that the trial court did not abuse its discretion by admitting these prior acts under ER 404(b). *Id.* at 861. Each act showed Mr. Lough's common plan to use his expertise as a paramedic to administer drugs and then rape women with whom he was in a dating relationship. *Id.*

State v. Yates is also instructive. 161 Wn.2d 714, 750, 168 P.3d 359 (2007). *Yates* is a capital case in which evidence of a common scheme or plan was used to support an aggravated first-degree murder conviction. Mr. Yates was accused of murdering two women who worked as sex workers. *Id.* at 728-29. Each woman had been shot in the head, their heads were encased in several plastic bags, they had been robbed, and their bodies had been dumped in remote areas. *Id.* The trial court admitted evidence of ten prior murders to which Yates had pleaded guilty. The women Mr. Yates had previously murdered were all sex workers who had been shot in the head, their heads were encased in plastic bags, they had been robbed, and their bodies had been dumped. *Id.* at 753.

The legal test at issue in *Yates* is not identical to the ER 404(b) test for admitting evidence of other wrongful acts. When common scheme or plan is charged as an aggravator, the jury—not the court—decides whether acts were committed as part of a common plan. However, in *Yates*, the jury found there was a common scheme or plan connecting the murders, and this court held that sufficient evidence supported the verdict. *Id.* All the acts in that case were markedly similar, committed against similar victims, and involved similar circumstances.

State v. Williams is a Court of Appeals case factually similar to this case. 156 Wn. App 482, 234 P.3d 1174 (2010). Mr. Williams was charged with raping two women in a similar manner. *Id.* at 488-89. He befriended each woman after meeting them on the street, he offered them drugs, they accompanied him to a secluded place, he strangled them to unconsciousness, and he raped them. *Id.* One of the victims was a new

11

acquaintance of Mr. Williams, while another described him as "her best friend." *Id.* at 488. In one of the incidents, Mr. Williams subdued the woman by grabbing her from behind and putting his forearm across her throat. *Id.* The Court of Appeals held that the trial court did not abuse its discretion by admitting the details of Mr. Williams' prior rape conviction under ER 404(b). *Id.* at 492. The prior act was sufficiently similar to the present offenses: Mr. Williams had offered a woman cannabis, grabbed her from behind, put his forearm across her throat, and strangled her to unconsciousness four times while he raped her. *Id.* at 489-90.

As these cases illustrate, trial courts must consider the nature of the prior acts, the victims, and the circumstances to determine whether the other acts can be admitted to show a common scheme or plan. In determining whether the trial court here abused its discretion by admitting the evidence of other acts, we consider those three elements.

V

BECAUSE MR. STEARNS' OTHER ACTS OF SEXUAL ASSAULT WERE SUFFICIENTLY SIMILAR TO THE PRESENT CASE, IT WAS WITHIN THE TRIAL COURT'S DISCRETION TO ADMIT THAT EVIDENCE UNDER ER 404(B)

Here, the trial court did not abuse its discretion by concluding that the prior rapes and the current offense met the requirements under ER 404(b) for a common scheme or plan. In cases involving sexual assault, ER 404(b) evidence of a common scheme or plan may be admitted to prove forcible compulsion and rebut a consent defense. *See State v. Brown*, 132 Wn.2d 529, 571, 574, 940 P.2d 546 (1997); *see also State v. Knapp*, 197 Wn.2d 579, 588, 486 P.3d 113 (2021) ("the issue of consent inherently exists within the

element of forcible compulsion" (citing *State v. W.R.*, 181 Wn.2d 757, 767 n.3, 336 P.3d 1134 (2014))).

First, our case law has emphasized that a similarity between the acts is the most important of the three elements. The acts must be "'*markedly* similar'" while the victims and circumstances must only be "'similar.'" *DeVincentis*, 150 Wn.2d at 19 (emphasis added) (quoting *Lough*, 125 Wn.2d at 856). Mr. Stearns contends the Court of Appeals correctly concluded the similarities between the cases involving BG, DH, and Ms. Williams are "'too tenuous to constitute a common scheme or plan.'" Suppl. Br. of Resp't at 19 (quoting *Stearns*, No. 82125-3-I, slip op. at 20). We disagree.[2] The other wrongful acts committed by Mr. Stearns were markedly similar to the acts here: he hit each victim on the head, strangled them, and sexually assaulted them, and there is evidence that all three victims were robbed. This factor weighs strongly toward showing a common plan.

Second, many of our cases note some similarities between the victims, if only in that they have a similar relationship to the defendant. However, we take this opportunity to clarify that prior wrongful acts can show a common scheme or plan even if the victims share few common characteristics. Not all crimes are committed with a specific victim in mind. A person can form a plan to commit a seemingly random act of violence; for

---

[2] We note that the State contends the Court of Appeals "erred by citing harmful rape myths as evidence that Stearns' crimes are generic and commonplace." Suppl. Br. of Pet'r at 32. For support, the State provides statistics showing that in 2023 the majority of "sex offenses were reported to have been committed with no weapons or force at all." Pet. for Rev. at 29 (citing *National Incident-Based Reporting System "Type Weapon" Table 2023*, FBI CRIME DATA EXPLORER, https://cde.ucr.cjis.gov/LATEST/webapp/#); *see also* Suppl. Br. of Pet'r at 31 ("studies show that strangulation during rape is rare").

example, one could hide in a bush in a public park and attack the first person who walks by. The fact that the victims of these attacks would likely share few characteristics would not preclude a court from finding a common scheme or plan.

Here, Mr. Stearns emphasizes that the victims of the crimes had different demographic characteristics and had a different relationship with Mr. Stearns. BG was an unemployed, 19-year-old white woman who knew Mr. Stearns casually through her brother. DH was a 41-year-old white woman who worked at an insurance firm and was a total stranger to Mr. Stearns. Crystal Williams was a 33-year-old Black woman who worked as a sex worker, and it is unknown whether she knew Mr. Stearns. However, the dissimilarities between the victims do not weigh heavily in this case. Each woman was a victim of a seemingly random act of violence, who was attacked in Seattle's Central District in a similar manner. These similarities between the victims are sufficient.

Finally, the circumstances of the crimes in this case were similar in that Mr. Stearns was able to attack each victim by tricking them. Mr. Stearns entered BG's home around midnight with a ruse, telling her someone was chasing him. Mr. Stearns attacked DH from behind after appearing to be passed out and lying in the gutter. While many details of Crystal Williams' death are unknown, based on the circumstances it is likely the killer approached Ms. Williams under the guise of offering drugs or money for sex.

Reviewing the trial court's decision to admit the evidence for abuse of discretion, we conclude that Mr. Stearns' other wrongful acts were sufficiently similar to show that he had engaged in a common scheme or plan to assault women.

## VI
## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION WHEN CONDUCTING THE PREJUDICE ANALYSIS

Mr. Stearns next argues that the trial court abused its discretion by finding that the evidence was more probative than prejudicial under the fourth prong of the ER 404(b) test. This prong incorporates the prejudice test from ER 403. *State v. Gresham*, 173 Wn.2d 405, 421, 269 P.3d 207 (2012).

Here, the trial court balanced the prejudice resulting from the other wrongful acts with their probative value on the record. The judge concluded that the other wrongful acts would not be prejudicial so long as a limiting instruction was given. As part of this analysis, the judge reasoned:

> [J]uries are exceptionally careful in King County. I have sat as a visiting judge in other counties, and, frankly, I think we have a very fair population or they are not big fans of the police. They are not big fans of the prosecutor's office, and they are quick to hold the State accountable, and I also believe that they do follow the law when they are given a limiting instruction.

2 VRP at 152.

A judge's subjective impression of jurors' attitudes toward the police based on the venue of the trial is not a relevant consideration for the ER 404(b) analysis. However, this statement by the judge does not show that she based her prejudice analysis on "untenable grounds." Instead, the judge concluded that the jury was likely to listen to the

15

court's instruction, in this case a liming instruction, which is a well-established presumption. *See, e.g., Carnation Co. v. Hill*, 115 Wn.2d 184, 187, 796 P.2d 416 (1990) ("A jury is presumed to follow the court's instructions and that presumption will prevail until it is overcome by a showing otherwise."). The judge's subjective impressions aside, there is no reason to believe that the jury disregarded the limiting instruction in this case.

Although trial courts should refrain from speculating on the characteristics of jurors in any specific venue, this comment did not show that the trial court abused its discretion in finding the probative value of the evidence outweighed its prejudicial effect.

VII
CONCLUSION

We reverse the Court of Appeals and reinstate Mr. Stearns' conviction. The trial court did not abuse its discretion. It did not base its decision on untenable grounds, and a reasonable judge could conclude that other wrongful acts were part of a common scheme or plan where, as here, the acts were markedly similar and the victims and circumstances had sufficient similarities. Further, the trial court did not abuse its discretion in conducting the prejudice analysis. We reverse the Court of Appeals and remand to the trial court for further proceedings consistent with this opinion.

Mungia, J.

WE CONCUR:

Stephens, C.J.

Gordon McCloud, J.

Johnson, J.

Montoya-Lewis, J.

Madsen, J.

Whitener, J.

González, J.

Yu, J.P.T.